## DAY *vs.* The New York Central Rail Road Company.

An agreement was made between the plaintiff and the defendant, a rail road company, by which the former was to convey to the latter a strip of land adjoining the rail road, and by which he agreed to erect upon his own lands, cattle yards, and pens for stock, &c. for shipping and transferring the cattle, &c. to and from the cars; to provide for feeding the stock; and to build a house to entertain the drovers &c. in charge of the stock. In consideration of which the defendant agreed to construct a rail road track, on its own land, alongside of the plaintiff's land, and to run its stock trains of cars over said track, and stop at certain places, and deliver to the plaintiff, upon his land, all the stock that was to be transported eastward, and to receive and load them there; to the end that the plaintiff might enjoy the profits to árise from keeping and feeding the stock. It appeared that the

Day *v.* New York Central Rail Road Company.

business contemplated by the contract could not be done without connecting the lands of the plaintiff with those of the defendant, by means of a platform or bridge resting partly upon the land of each party.

*Held,* 1. That the contract, if valid, in effect created an easement or servitude which was to be binding upon the real property of the defendant, as the servient tenement, for the benefit of the plaintiff and his land, and those who should succeed the plaintiff in his real estate.

2. That the negative easement acquired by the plaintiff in the lands of the defendant, by virtue of the agreement, was an incorporeal hereditament, the right or title to which could only pass by grant, or deed under seal, or be acquired by prescription; and that the contract in this case being by parol was void.

3. That the agreement, being oral, was void by the statute of frauds, because, from its nature and terms it was not to be performed within one year, but was to continue in operation, as a permanent arrangement, during the existence of the corporation.

THIS was an appeal from an order made at a special term, denying a motion for a new trial; also an appeal from the judgment; the parties having agreed that both appeals might be heard together.

*G. D. Lamont,* for the plaintiff.

*John Ganson,* for the defendant.

*By the Court,* MARVIN, J. The plaintiff claims that in May, 1855, he entered into an agreement with the defendant, by which he was to convey to the defendant a strip of land upon his premises, some 1774 feet in length and some 41 feet in width, and lying alongside of the rail road lands of the defendant; that the plaintiff was to erect upon his own lands, adjoining the strip so to be conveyed, cattle yards, and pens for stock, swine, sheep, &c. that might be wanted to accommodate the shipping and transferring to and from the cars, the cattle &c., and to provide for feeding the stock, and would build a house prepared to entertain the drovers and men in charge of the stock; and that the defendant, in consideration thereof, was to bring its cattle business upon his farm and to receive and load the cattle &c. there.

It is alleged and claimed that the plaintiff performed the agreement on his part; that the defendant constructed and laid down tracks on the land so conveyed, and for a time performed the agreement, but in 1856 broke the agreement by neglecting and refusing to bring its cattle business upon the plaintiff's farm, and to receive and load cattle &c. there, &c.; and that the plaintiff lost the profits to arise from feeding and keeping the stock. The evidence to prove the agreement consisted in, first, a written instrument executed by the plaintiff only, dated May 24th, 1855, by which the plaintiff agreed to sell and convey the land, and "to build all the cattle yards and pens for stock, swine, sheep, &c. that may be wanted to accommodate the shipping of the same from my land, adjoining the land hereby agreed to be sold, upon the said rail road company's cars;" second, a deed executed by the plaintiff and wife, dated May 24th, 1855, conveying the land to the defendant. "And also the right of ingress and egress to and from the land hereby conveyed, over and across the land of the parties of the first part to the public highway northwardly, in such place or places as may be convenient or necessary to load or unload cattle, horses, sheep, swine, or any other animal from said highway, upon or off of the cars, on the said rail road tracks of the said party of the second part, built on the lands hereby conveyed." It also contains a clause by which the plaintiff "agrees to build and keep in repair all the cattle yards and pens for stock, swine, sheep, &c. that may be wanted to accommodate shipping or transferring to or from the cars on his land adjoining the land hereby sold and conveyed, free from any expense to said rail road company." These two instruments constituted the only *written* evidence of the agreement between the parties. The evidence of what the defendant was to do was by parol, unless it is to be inferred that it was to do something from its acceptance of the contract and deed to be found in those instruments. The plaintiff gave parol evidence, under objection and exception, tending to prove the contract as claimed by him.

Day *v.* New York Central Rail Road Company.

· The defendant's counsel makes the point, that the agreement upon which the plaintiff sought to recover, being oral, was void; that it related to an interest in land and power over and concerning land. The statute is, "no estate, or interest in lands, other than leases for a term not exceeding one year, nor any trust, or power over or concerning lands, or in any manner relating thereto," shall be created, &c. unless by act or operation of law, or by a deed or conveyance in writing, &c. (2 *R. S.* 134, § 6.)

What was the nature of the agreement on the part of the defendant ? Let us analyze and comprehend the agreement. The defendant was to construct a rail road track on its own land, close alongside of the plaintiff's land, and was to run its stock train of cars over this track, and stop at certain places, and deliver to the plaintiff, upon his land, all the stock that was to be transported eastward, and was to receive and load them there, to the end that the plaintiff might enjoy the profits to arise from keeping and feeding the stock. Suppose such agreement valid and binding; would it create any *interest* in, or *trust* or *power* over or concerning the rail road ? It could not be performed without using the rail road, and that too for the benefit of the plaintiff's land. Would not such agreement attach to and affect the rail road ? Suppose the defendant had sold its road, to any other corporation, being authorized so to do; could not the plaintiff, if the contract was valid, insist that the vendee should perform it ? The plaintiff's counsel argues that the contract was personal only, and that it had no effect on the real estate of the defendant.

It would not be claimed that this contract could by possibility be performed without using the defendant's road, and that too in a particular manner. It would not satisfy the contract to stop the cars at a distance from the plaintiff's land, unload the cattle, and drive them to the plaintiff's pens and yards to be kept and fed, and then drive them back to the defendant's cars, even if the cattle drovers would consent. No, the right of the plaintiff is that the cattle shall be brought

to his land in the cars, on the track of the defendant's road, and he has a right to receive them from the cars, and that the defendant should receive or load them there upon their cars, when they are to be transported eastward. The plaintiff tells us how this was done. " The defendant built a platform and shutes to unload and load cattle, the platform was as high as the floor of the cars, to receive the cattle, and about 250 feet long and 9 feet wide, located on the land for track, and partly on the plaintiff's land, about 10 feet." Thus it seems that the business contemplated by the contract could not be done without uniting the lands of the plaintiff and defendant. The platform rested partly upon the plaintiff's land and partly upon the defendant's land, and constituted the bridge or passage way on which the cattle were to go from the premises of the defendant to the premises of the plaintiff, and so back again. Would not this give the plaintiff an interest in the defendant's land, and the defendant an interest in the plaintiff's land ? How does this differ in principle from erecting a dam upon the land of another ? (*Mumford* v. *Whitney*, 15 *Wend.* 380.) But this case goes much further. If the contract is valid, it in effect created an easement or servitude, which was to be binding upon the real property of the defendant, as the servient tenement, for the benefit of the plaintiff and his land, and those who should succeed the plaintiff in his real estate. The case in principle cannot be distinguished from *Pitkin* v. *Long Island Rail Road Co.*, (2 *Barb. Ch. Rep.* 222.) This case is more marked than the case cited. Pitkin's land did not adjoin the lands of the rail road. His land consisted of a racecourse ; a lane extended from the rail road track to the course, and the agreement, as claimed, was that the cars should stop at the lane. It was held that such an agreement was, in substance, the grant of an easement or servitude, and that it could not be made by parol, under the provisions of the common law and the statute of frauds. Adopt the argument of the chancellor in that case, and apply it to this case, and it would be, that the plaintiff has no legal interest in having the

Day *v.* New York Central Rail Road Company.

cars of the defendant run alongside of his land and stop there for the purpose of unloading cattle upon his land, and then receiving them upon its cars from the plaintiff's land permanently, except as it may benefit him as the owner of his land. Such right is a negative easement in the property of the defendant, that is, the power to restrict the defendant as the owner of the servient tenement, in the exercise of general and natural rights of property, and to compel the company to use it in a particular way, by keeping or permitting certain erections thereon, and stopping with its trains at a particular place for the plaintiff's use and benefit, as the owner of the adjoining land, as the dominant tenement. It is therefore an incorporeal hereditament, the right or title to which can only pass by grant, or deed under seal, or be acquired by prescription. (*See* 3 *Kent's Com.* 434.)

If the right claimed had been created by grant, or deed under seal, it would have been a real right, a charge on the defendant's land for the benefit of the plaintiff as the owner of his land, and such right would have descended to his heirs, or passed by a grant of his land with the appurtenances. It would have been a charge upon the defendant's estate, for the benefit of the plaintiff's estate. (3 *Kent,* 443.)

I have looked carefully into the instruments executed by the plaintiff. They contain no conditions, nor do they contain any thing from which a grant of the right claimed can be implied. Nor were the circumstances such as to create the right by implication. They contain a covenant on the part of the plaintiff to build all the cattle guards and pens that may be wanted to accommodate the shipping of the stock &c. from the plaintiff's land adjoining the land of the defendant. In the deed the plaintiff grants the right of ingress and egress to and from the land conveyed, over and across the land of the plaintiff, to the public highway northwardly, in such place or places as may be convenient or necessary to load or unload cattle &c. from said highway upon or off of the cars on the rail road track of the defendant, built on the land conveyed. The

plaintiff also covenants to build and keep in repair all the cattle yards and pens for stock &c. that may be wanted to accommodate shipping and transferring to and from the cars on his land adjoining the land thereby sold and conveyed, free from any expense to the defendant.

The defendant does not agree to do any thing; nor can any covenant on its part be implied, by any fair construction of the instrument. The claim is that the defendant was to bring all its cattle business to the plaintiff. All the covenants on the part of the plaintiff, and the grant, are entirely consistent with the right on the part of the defendant to make the same arrangements with other persons, or to establish cattle yards and pens of its own. Besides, there can be no implied covenants in a conveyance of real estate. (1 R. S. 738, § 140.)

The defendant's counsel also makes the point, that if the agreement was a mere personal contract, being oral, it was void, because from its nature and terms it was not to be performed within one year. In other words, it was to continue in operation during more than one year, viz. during the existence of the corporation. I think this point is well taken. The chancellor so held in *Pitkin* v. *The Long Island Rail Road Co.*, (*supra.*) By the statute an oral agreement is void " that by its terms is not to be performed within one year from the making thereof." The argument of the plaintiff's counsel is, that it was not provided *by the terms* of the agreement that it should not be performed within one year, and that therefore the agreement does not come within the statute, and he cites several cases: *McLees* v. *Hale*, (10 *Wend*, 426,) in which a large number of cases are collected; also *Plimpton* v. *Curtiss*, (15 *Wend*. 336;) *Lyon* v. *King*, (11 *Metc.* 411;) *Peters* v. *Westborough*, 19 *Pick.* 364.)

It will be seen by consulting these cases, that the contract was of such a nature that it might be performed within the year, or it might come to an end and cease to be operative. Some of the contracts related to supporting a person for a certain number of years, or until the person should attain a cer--

Day v. New York Central Rail Road Company.

tain age. Such contracts, it was held, were not void, because they rested upon a contingency which might happen within the year, as the death of the person to be supported. Some of the cases say, it does not appear but that the contract was to be performed within a year. If the thing may be performed within a year it is not within the statute. If, however, it appear from the fair construction of the agreement, that it is not to be performed within the year, then a note in writing is necessary. (15 *Wend.* 336.)

Treating the agreement as personal and executory, it was a permanent arrangement, and it was contemplated it should continue during the existence of the corporation. The plaintiff's covenant to construct and maintain yards and pens &c. was perpetual, and by the agreement the defendant was to take its cattle business to him. True no time was specified, but no reasonable construction can be given to it other than that it was to continue permanently, as long as the corporation existed. It is clear that what the defendant undertook to do, could not be all performed in one year. The learned judge held, in this case, that the contract was continuous, and that the plaintiff could only recover for the damages sustained up to the time of commencing the action. It seems to me, also, that the contingency applicable to the life of natural persons, ought not to be applied to this case. To bring such contingency into the case and make it available in avoiding the statute, we must suppose that the corporation might be entirely dissolved within a year, leaving no successor, as receiver or otherwise, upon whom the liabilities of the corporation for its contracts might devolve. We cannot with any reason resort to such a contingency. If the corporation should become insolvent, and proceedings to dissolve should be instituted, the law has made ample provisions for its liabilities under its contracts.

Chancellor Walworth, in *Pitkin* v. *The Long Island Rail Road Co.* did not hesitate to declare the executory agreement in that case, as a permanent arrangement, void, because, in

his language, " from the nature and 'terms of the agreement it was not to be performed by the company within one year from the making thereof." The cases cannot, in principle, be distinguished. The statute, as the counsel earnestly claimed, reads, " Every agreement that by *its terms* is not to be performed," &c. If an agreement is such that from its nature it cannot be performed within one year, and must be so construed, then it is within the contemplation and meaning of the statute. The terms of the agreement are what the agreement *necessarily* is.

It is not necessary, probably, to say that a parol agreement which is not to be wholly performed within the year is void. This is so. (*Broadwell* v. *Getman,* 2 *Denio,* 87.)

In my opinion the two positions of the defendant, thus noticed, are fatal to the plaintiff's right to recover damages in this action, and the plaintiff should have been nonsuited.

The judgment must be reversed.

[ERIE GENERAL TERM, May 14, 1860. *Greene, Marvin, Davis* and *Grover,* Justices.]