REED *v.* CANASTOTA NORTHERN R. CO.

(*Supreme Court, General Term, Fourth Department.* September, 1892.)

1. CONSTRUCTION OF RAILROAD—ACTION FOR DAMAGES—FINDINGS—EVIDENCE.
    In an action for damages to a farm caused by the construction of a railroad, plaintiff testified to an oral agreement on the part of defendant to pay $1,800 for a right of way. Defendant's agent denied the agreement absolutely, and there were declarations by plaintiff, and writings signed by him, which strongly corroborated the agent. *Held,* that a finding that such an agreement existed was against the weight of the evidence.

2. SAME—DAMAGES.
    Assuming that it was trespass for defendant to build its road on plaintiff's land, it was error to admit evidence and award damages on the assumption that the trespass was to be permanent.

Appeal from judgment on report of referee.

Action by Edmund M. Reed, Jr., against the Canastota Northern Railroad Company for damages to plaintiff's farm caused by the construction of defendant's road. From a judgment for plaintiff, entered on the report of a referee, awarding $1,200 damages and $345.09 costs, defendant appeals. Reversed.

Plaintiff in his complaint alleges "that, on or about the month of June, 1886, this plaintiff and the said defendant, by its duly-authorized agents, servants, or representatives, entered into a contract and agreement, whereby said plaintiff agreed to allow said defendant to survey, stake out, build, operate, and run its railroad, cars, and tracks upon and over said plaintiff's lands and premises in the town of Vienna, Oneida county, N. Y., where the said railroad track and road is now laid through and over said farm: provided, and upon condition, and for a consideration, that said defendant pay to said plaintiff the sum of $1,800 in money, and upon the further consideration, stipulation, and condition that said defendant would build its station or depot at which trains should stop for the loading and unloading of passengers and freight, and the accommodation of the public, upon said plaintiff's said lands and premises, in close proximity to said railroad track, near plaintiff's hotel, either at the place known as the 'Orchard Lot,' or at the place where plaintiff's barns now are; and said defendant, its duly-authorized agents, servants, and representatives, stipulated and agreed to pay to said plaintiff said sum of $1,800, and to build said station or depot as aforesaid, either at said Orchard lot (so called) or at the place where plaintiff's said barns are situated on plaintiff's premises near his hotel, as aforesaid; at which station or depot trains should stop for the loading and unloading of freight and passengers, and the accommodation of the

public, as heretofore alleged and described, and not otherwise or elsewhere. And upon said considerations, and upon condition that said defendant would pay said money and build said station and depot for the stopping of trains as aforesaid, this plaintiff made said agreement and gave his consent as aforesaid." The complaint further alleges that, in pursuance of such agreement, "said defendant went upon said plaintiff's said land and premises, and, by means of its agents, servants, and representatives, staked out, surveyed, dug up, trampled upon, made high embankments of earth, and piled some to a great height, and of the width of about sixty-six feet, and extending in length about nine hundred and sixty-five feet; and upon said embankment, which is at different places upwards of 14 feet in height and level at the top, said defendant, its agents and servants, have laid, or caused to be laid, ties and railroad tracks, and the whole of said structure made as aforesaid extends the entire length, and through plaintiff's farm, dividing said farm into two parcels, and by reason of said embankments and track, and the fences defendant caused to be placed upon both sides thereof, * * * plaintiff has been deprived of the use of his said land within said strip heretofore described, and on both sides thereof, and has been deprived of the free use, enjoyment, ingress and egress to and from his said farm, and has been put to great trouble, hindrance, and delay in cultivating his said lands, and planting, tilling, and harvesting his crops, and in pasturing his cattle and live stock. And, by reason of all the facts and acts of defendant aforesaid, said plaintiff's farm has greatly depreciated in value, and this plaintiff has suffered and sustained damages, as he verily believes, to the amount of $5,000." In the answer "defendant admits that it went into possession of the premises described in plaintiff's complaint under an agreement for the purchase thereof, which agreement has been fully performed on the part of this defendant, but denies that the consideration for said premises was $1,800, or that this defendant, its agents, servants, or representatives, agreed to pay such amount, or any other sum of money, in consideration for such entry, or for any of the purposes alleged in the second subdivision of plaintiff's complaint; but avers that said plaintiff voluntarily gave such right of way to this defendant in consideration of the building and operating said railroad, and in consideration of the enhanced value of this plaintiff's premises by reason thereof." And the defendant further avers "that, by the terms of said contract, the plaintiff agreed, upon the performance and fulfillment of such conditions and covenants by this defendant, to execute and deliver to it a good and sufficient deed of conveyance of the premises described in plaintiff's complaint, and now occupied by this defendant." The referee found that the defendant, "in the years 1886 and 1887, built and constructed a steam railroad from the village of Canastota to the village of Camden, in the county of Oneida, and running through the town of Vienna, and upon and across the lands and premises then owned and occupied by the plaintiff." That the farm consisted of about 78 acres of land, "of which about 20 acres was woodland, and lies some three fourths of a mile distant from the remainder of the farm of 58 acres." The referee also found "that in the month of June, 1886, one Fred C. Fisk was in the employ of the defendant, as its agent, to obtain rights of way for the defendant's proposed railroad. That in the month of June, 1886, plaintiff and said Fred C. Fisk made a parol agreement, whereby the defendant was to pay the plaintiff a sum of not less than $1,800 for the right of way across the lands and premises of the plaintiff in said town of Vienna, as soon as defendant should commence operating its railroad, and by said parol agreement defendant was also to build its depot and freight house upon plaintiff's premises, either on the lot designated as the 'Orchard Lot,' or where the barns were, and, if built where the barns were, then the said barns were to be moved by the defendant, and a roadway was to lead from the freight house to the highway in front of plaintiff's residence. The defendant was also by

said agreement to pay the plaintiff a sum in addition to the $1,800 for what land it took for freight house and depot, and was also to construct for plaintiff a pass under its (defendant's) railroad, so that plaintiff could drive through. Upon these conditions and considerations, the defendant was to have the right of way across the lands and premises of the plaintiff, or that portion thereof consisting of about 58 acres, and the right to build, construct, maintain, and operate its railroad where the road was finally built, and is now being operated, by defendant. That in said month of June, 1886, said Fred C. Fisk spoke to plaintiff in reference to changing the line of route of defendant's road from where it had been surveyed, and which was known as the 'Smalley Survey,' so that it would run nearer to the buildings of the plaintiff; and the plaintiff refused to allow said change or the road to run nearer to his buildings, and thereupon the parol agreement set out in the above sixth finding was made." The referee also found that the defendant "constructed and placed upon plaintiff's said land and farm an embankment of earth, gravel, and stones from five to fourteen feet in height, and from one to four rods wide, and extending from the center of the west boundary of plaintiff's said farm and premises to the easterly boundary thereof, a distance of 967 feet." He also found "that plaintiff intended and expected to receive the compensation specified in his said parol agreement with Fred C. Fisk for permitting and allowing the defendant to build its railroad where same was built and is being operated." He also found "that, for the purpose of fulfilling on his part said parol agreement with said Fred C. Fisk to give the defendant the right of way mentioned therein, plaintiff and his wife signed, executed, and duly acknowledged the deed of August 13th, (defendant's Exhibit 2.)" He also found "that said deed of August 13th (defendant's exhibit) was never in fact delivered to the defendant. That said deed was by the plaintiff left with Eri Kinne, the justice before whom its acknowledgment was taken, and the same day, or very shortly thereafter, plaintiff went to said Kinne, and informed him that he must not deliver said deed to the defendant till the defendant should settle with him (said plaintiff) for his compensation and damages. That no settlement was made between defendant and plaintiff, and said Kinne retained the deed in his possession until its production by him as a witness in court on the trial of this action." The referee also found "that plaintiff did not intend to deliver the deed to the defendant when he left it in the care and custody of said Kinne. That defendant has never accepted the said deed. That no consideration was ever actually paid to or received by plaintiff for said deed. That the time when the said $1,800 was to be paid under said parol agreement with said Fred C. Fisk had expired before the commencement of this action, and the defendant has not paid any part thereof, and the plaintiff has not received any compensation for his lands, or for the injury thereto caused by the building and maintaining of said road and structures thereon." The referee also found "that by reason of the building, placing, and constructing, upon plaintiff's farm and premises, the said embankment of earth, gravel, stones, and said trestle, spiles, ties, rails, fences, building structures, as specified in the eighth finding of fact, plaintiff's said farm and premises was and is diminished in value, and was and is injured and damaged, and plaintiff was thereby deprived of the full and free use and enjoyment thereof, and prior to the commencement of this action suffered damages in the sum and to the extent of $1,200." In his conclusions of law he found—"*First*, that the parol agreement between plaintiff and Fred C. Fisk, purporting to give a right of way across plaintiff's land and premises, is void, and cannot be enforced; *second*, that defendant impliedly promised and agreed to, and in justice ought to, pay and compensate plaintiff for the damages and injury which it has caused to plaintiff's said land and premises; *third*, that defendant is not entitled to any part of the judgment or relief demanded in its answer in this action; *fourth*, that plaintiff is entitled to judgment against

the defendant for the sum of $1,200 and costs of this action." Timely exceptions were made and served to the conclusions of the referee.

The referee was requested to find, and refused to find, "that on the 13th day of August, 1886, this plaintiff, in performance of said contract, made and executed a deed of conveyance of the premises now occupied by this defendant through plaintiff's [land,] and that plaintiff delivered said conveyance to one Eri Kinne, for the use and benefit of the defendant, and to be delivered to defendant on the completion of defendant's railroad to Camden, Oneida county, N. Y.; that the consideration of such deed was the nominal one of one dollar, payment of which was acknowledged in said deed, and the further consideration of the construction and maintenance of a cattle pass on the easterly side of plaintiff's premises." The defendant requested the referee to find, and he refused to find, "that Eri Kinne was, on the 13th day of August, 1887, the duly authorized and designated agent for this defendant for the receipt and acceptance of deeds, and for the payment of money consideration connected therewith." The referee found the incumbrances on the farm were $2,500, and he refused to find that the defendant "is lawfully in possession of premises alleged in the complaint herein, and is entitled to the delivery of the deed of conveyance, (defendant's Exhibit 2,) and is entitled to have the premises mentioned in said conveyance cleared of incumbrance by plaintiff at his own cost and expense;" and he refused to find "that plaintiff is not entitled to recover any damages in this action."

On the 12th day of March, 1886, the plaintiff executed a contract to Milton Delano, Fred C. Fisk, and others, "representing the interests of all parties and persons interested in the construction of the railway," in which was the following language: "The said party of the first part, in consideration of the sum of one dollar to him duly paid, the receipt whereof is hereby acknowledged, hereby agrees to sell and convey to said parties of the second part, or a railroad company, to be organized for the construction of a railway from the village of Canastota, Madison county, to the village of Camden, Oneida county, passing through the towns of Lenox, Madison county, and Verona, Vienna, and Camden, in Oneida county, New York, a tract or parcel of land, sixty-six feet in width, lying in the town of Vienna, county of Oneida, state of New York, the center line of which is designated in the preliminary survey, the map and profile of which is to be filed in the county clerk's office of Oneida and Madison counties when the said company shall be so organized as aforesaid. The description of said premises beginning on the division line of lands between first party and Allen Little, and said line is proposed to be changed, running thence northeasterly quite through said party's land, to the division line between said party and Lysander Kilts. The consideration to be paid for the above premises is to be the nominal sum of one dollar, and the public benefit to be derived from the construction of said railway, as proposed, from Canastota to Camden, New York, such conveyance to be made and executed by party of the first part to said parties of the second part or to said railway company, so to be organized, as soon as and whenever such proposed railway company shall be duly and legally organized for the construction of said railway between the points above named, and shall have filed a map and profile of its proposed route as aforesaid. * * * When said railway shall be duly organized, the party of the first part covenants and agrees, as aforesaid, that they may enter upon said lands, lay out and commence constructing its railway and structures thereon before the execution and delivery of the deed hereinafter provided for, said railway company doing no unnecessary damage to the adjoining premises. And the said party of the first part, upon the due and legal organization of said railway company, shall and will, at once, execute, acknowledge, and deliver to said parties of the second part, or to the said railway company, or to its successors or assignees, a deed of conveyance of the hereinbefore described premises, in fee simple, and

clear from all incumbrances, dower, and inchoate dower rights, which deed shall contain a covenant of guaranty, and the usual full covenant, including a covenant against incumbrances." The contract was signed and sealed by the plaintiff, and delivered in the presence of Eri Kinne, as a subscribing witness. On the 13th day of August, 1886, apparently in furtherance of the stipulations contained in the contract, the plaintiff and his wife executed a deed which stated: "For and in consideration of the sum of one dollar ($1.00) to them duly paid have sold, and by these presents do grant and convey, unto the said party of the second part, (the Canastota Northern Railroad Company,) and to its successors and assigns, forever, all that tract or parcel of land situate in the town of Vienna," (then follows a description of the premises.) And the deed stated that the land described was 1.46 acres of land, and that "the party of the second part agrees to maintain, for the benefit of the party of the first part, an underground cattle pass on the easterly end of the premises hereby conveyed." The deed was acknowledged before Eri Kinne on the 13th of August, 1886, and by the plaintiff left with Kinne. In speaking of that deed, Kinne testified: "At the time it was left with me I received no instructions from the plaintiff or his wife in regard to the deed. He was present when Mr. Fisk made request to me to put in clause in deed in reference to cattle pass." Subsequent to that interview Kinne testifies: "He (plaintiff) asked for a return of deed to him, and said the defendant had not performed its contract, and forbid me delivering deed to defendant." The witness Jennings testified that he was present at the time of the execution of the deed, and that Reed objected to signing the deed, "for the reason that it did not provide for a cattle pass. I then wrote in that clause referring to cattle pass, and Mr. Reed signed and acknowledged the deed. At the execution of the deed (defendant's Exhibit 2) nothing was said by Mr. Reed or any one else present that Mr. Reed was to have $1,800 or a location for depot as a consideration for deed. At this time I knew the location of the present line of railroad, and it has not been changed since that time." Plaintiff testified upon the trial to an agreement between him and Fisk that the defendant should pay $1,800, and locate its depot and freight house substantially as found by the referee. On the other hand, Fisk denied the agreement absolutely; contradicted the plaintiff's statements in respect thereto; and the defendant gave evidence to the effect that the plaintiff had made declarations on several occasions that he had given the right of way through his land, and of other facts and circumstances inconsistent with his testimony in respect to the agreement.

During the examination of the witness David H. Tremain, the following questions were propounded to him: "*Question.* In the year 1886, what was the fair market value of plaintiff's farm and premises without the embankment, track, ties, filling, fences, and buildings which constitute the roadbed —railroad—which runs across the farm and premises of plaintiff? What was the fair market value of the farm clear of these things? (Objected to as incompetent, immaterial, inadmissible under pleadings, not proper measure of damages. Overruled. Exception by defendant.) *Answer.* I should think about $6,000. *Q.* Assuming same condition as in last question, what was the value of farm in spring of 1887? (Same objection as to last question, and further as to any evidence of value in 1887. Overruled. Exception.) *A.* Think the value would have been the same. *Q.* How much less was this farm worth in year 1886 and spring of 1887 by reason of this roadbed, this embankment, the fences alongside, and the buildings, the ties on roadbed, and the tracks having been laid and placed on the farm as they were? (Objected to as incompetent, immaterial, irrelevant, not admissible under the pleadings, and not the proper measure and rule of damages, and, further, as to form of question. Overruled. Exception.) *A.* I should say $2,000 " Similar questions were propounded to the witness Colson; similar objections

made thereto, overruled, and exceptions taken. Also to the witness Meyrs. Similar questions were propounded to the plaintiff, and objections were taken thereto, and an exception, and the plaintiff stated that the fair market value without the road was "seventy-five dollars per acre for the whole farm; about 79 acres in the whole farm;" and, with the road, "fifty dollars an acre."

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

F. E. Tibbetts, for appellant. Sayles, Searle & Sayles, for respondent.

HARDIN, P. J. In respondent's argument, to sustain the judgment, he cites the celebrated case of Day v. Railroad Co., several times. That case was reported first in 31 Barb. 548, next in 53 Barb. 250, and next in 51 N. Y. 583. Thereafter a new trial of the case was had, and it came to this court, and was examined, and the opinion of this court was prepared by me, and appears in 22 Hun, 412, and from the statement of facts and the opinion so appearing it is manifest that the case is quite unlike the one before us. Our decision was affirmed in 89 N. Y. 616. In that case, in 1855, the plaintiff and defendant entered into an oral agreement by which the former conveyed to the latter certain lands and a right of way over other real property, and the latter agreed to lay a separate track to the adjoining lands of the plaintiff, and to bring the cattle and stock which might come to it from the west to the said plaintiff's lands, to be there fed and cared for. The plaintiff conveyed the land and right of way to the defendant, but the latter shortly thereafter repudiated the agreement, and failed and refused to bring the cattle to the plaintiff's yard. We there held, viz.: "In this action brought by the plaintiff in 1857, to recover the damages occasioned to him thereby, that, as the parol agreement was void, because it was not to be performed within one year, the plaintiff could not recover the damages occasioned by the breach thereof; that, as the defendant has repudiated the agreement after a partial performance thereof, the plaintiff was entitled to recover the value of the land and right of way conveyed, after deducting therefrom the value of the partial performance of the agreement by the defendant, viz., the profits made by him from the business brought to him by the defendant." In the statement preparatory to my opinion it appears: "The plaintiff then amended his complaint by adding a second count, being a common count for land and right of way sold." We think that case is quite unlike the one before us, especially if we assume that the referee's finding of fact is correct that the deed in question never was delivered. If the referee, in the case before us, had found that there was a delivery of the deed, and that as a consideration for the premises conveyed to the defendant there was to be paid to the plaintiff the sum of $1,800, and the depot and freight house were to be constructed as claimed, and that the defendant had failed to comply with its agreement, we might then have had a case before us somewhat analogous to the case of Day v. Railroad Co. According to the findings made by the referee, if the defendant should pay the damages, allowed by the referee, to the plaintiff, it would acquire no title to the right of way in virtue of such payment, nor would it have any deed securing to it the ownership of such right of way. It therefore would be liable to a subsequent action for trespass or an action to recover possession of the strip of land in the occupation of the defendant or its lessee.

2. We are inclined to think that the finding of the referee that there was an agreement to pay $1,800, etc., as stated in his findings of fact on that subject, is against the weight of the evidence produced upon the trial in respect to that issue. It is true the plaintiff testifies to facts which, if believed, would support the finding of the referee; but, on the other hand, there is the testimony of Fred C. Fisk, a witness, who, in the earlier stages of the case, was called by the plaintiff, who testifies absolutely that there was never any such agreement made; and there are declarations of the plaintiff found in the case

entirely inconsistent with his testimony, and declarations which tend to corroborate the version given by the witness Fisk. Besides, the contract signed by the plaintiff in March, 1886, and the deed executed by him the 13th of August, 1886, coupled with the facts and circumstances relating thereto as related by himself, Fisk, Jennings, and Stroud, are quite persuasive that no such agreement was ever made by Fisk as related in the testimony of the plaintiff.

3. If it be assumed that the plaintiff has a cause of action in the nature of trespass against the defendant, then the rule of damage adopted by the referee is erroneous. The referee has allowed testimony as to the value of lands of the plaintiff before the road was constructed (including the 20 acres of land three quarters of a mile from the parcel crossed) against the objection of the defendant, and has allowed evidence of the value of the plaintiff's premises after the construction of the road. We think the rulings in respect to the rule of damage were erroneous. *Amerman* v. *Deane,* (N. Y. App.) 30 N. E. Rep. 742; *Pappenheim* v. *Railroad Co.,* 128 N. Y. 436, 28 N. E. Rep. 518. These views lead to the conclusion that a new trial should be ordered upon the law and facts.

Judgment reversed on the law and facts, and a new trial ordered, with costs to abide the event. All concur.