(48 Misc. Rep. 543)

### MOSKOWITZ v. DIRINGEN.

(Supreme Court, Appellate Term. November 24, 1905.)

1. LANDLORD AND TENANT—SUBLEASE—RIGHTS OF SUBTENANT.

Where a tenant sublet the premises, the surrender of his lease did not affect the subtenant under his lease; its only effect being to make him the tenant of the owner.

[Ed. Note.—For cases in point, see vol. 32, Cent. Dig. Landlord and Tenant, § 369.]

2. SAME—CONSTRUCTION OF LEASE—SALE OF PROPERTY.

Where a lease, partly printed, contains the written words "when the houses are sold," which may be intelligibly construed with the payment clause, or unintelligibly with the succeeding re-entry clause, and the former reads, "at the yearly rental to be paid in equal monthly payments in advance of $11, when the houses are sold, on the 1st day of each" month, such construction must be given, and the lease is not terminated on the sale of the premises.

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Joseph Moskowitz against David Diringen. From a judgment for plaintiff, the defendant appeals. Reversed.

Argued before SCOTT, P. J., and GILDERSLEEVE and MacLEAN, JJ.

Nathan Frank, for appellant.
Steuer & Hoffman, for respondent

SCOTT, P. J. This is an appeal from a final order in favor of the landlord in a holdover proceeding. On July 5, 1904, one Jennie Youngelson, the tenant of the premises under a lease from the owner, made a lease of the rooms involved in this proceeding to the appellant for the term of four years, and the appellant went into possession. This lease was duly recorded. Shortly after making this lease Youngelson surrendered her lease to the owners of the fee. Of course, this surrender did not affect the appellant's rights under his lease; its only effect being to make him the tenant of the owner. Ritzler v. Raether, 10 Daly, 286; Eten v. Luyster, 60 N. Y. 252; Weiss v. Mendelson, 24 Misc. Rep. 692, 53 N. Y. Supp. 803. Some months after the premises were sold to one Steuer, who simultaneously executed a lease of the same premises to the respondent, who has never been able to take possession, owing to the appellant's refusal to surrender. The respondent's right to possession is based upon the claim that appellant's lease was conditioned to terminate

upon a sale of the property. Unless this claim be well founded, the final order must be reversed and the proceeding fail.

The lease is in the customary printed form, with the blanks filled in in writing. It provides for the payment of a yearly rental of $150. Then follow three lines, partly printed and partly written, as follows, the printed portion being italicized: (1) *"to be paid in equal monthly payments in advance"* (2) *"on the first day of each and every"* (3) *"month."* At the end of the first line, after the word "advance," is written in the margin the words "of eleven"; at the beginning of the second line, before the word "on," is written in the margin the word "dollars"; at the end of the second line, after the word "every," is written in the margin the word "when"; and, again in the margin, before the first two lines of the following clause, are written the words "the houses are sold." All the words written in the margin are evidently in the same handwriting and written in the same ink; the handwriting and ink being different from those used in the other parts of the lease. The succeeding clause is the customary one providing for re-entry in case of nonpayment of rent or default in any covenant. The respondent insists, and the justice held, that the words written in the margin, "when the houses are sold," must be read as if written as a part of the re-entry clause, and that, if so read, they would authorize a re-entry when the sale was effected, or, in other words, that a sale of the premises ipso facto terminated the lease.

We do not consider that the words should be so read, and, if they were, they would not have the effect claimed for them. In considering the meaning and intent of the interpolation, we must consider and read all the interpolated words, and not, as respondent would have us, ignore and disregard part of them; and we should, if possible, so read them as to make an intelligible clause. The fact that the interpolated words are in the same handwriting and ink indicates that they were written at the same time and were intended to compose one clause. If they be read in order, disregarding the words in different handwriting and ink, they would read: "Of eleven dollars—when the houses are sold." So read, the payment clause would read: "At the yearly rental or sum of $120, to be paid in equal monthly payments in advance of eleven dollars when the houses are sold, on the first day of each and every month." Thus read, the clause, while perhaps not happily expressed, is perfectly clear and intelligible. The respondent's reading would ignore the words "of eleven dollars," and make the reading "when month the houses are sold and it is agreed that if any rent shall be due and unpaid or if default shall be made in any of the covenants," etc., the landlord may re-enter. Thus read, the clause would be unintelligible, and there certainly could be gathered from it no agreement that the lease should terminate ipso facto upon a sale. At the most it would only provide that, if the houses were sold, the landlord might re-enter for nonpayment of rent or the violation of some covenant. The general rule for construction of leases is that they must be construed most favorably for the lessee, and es-

pecially is this the case when the clause to be construed is claimed to be one destroying or defeating the estate of the lessee. It is not, however, necessary to resort to this rule in the present instance; for it is apparent that the lease cannot be construed as the respondent seeks to do.

The final order must be reversed, with costs, and a new trial granted.

GILDERSLEEVE, J., concurs. MacLEAN, J., concurs in result.