(161 App. Div. 122)

AYER v. BONWIT.

(Supreme Court, Appellate Division, First Department.   March 6, 1914.)

1. LANDLORD AND TENANT (§ 37*)—LEASE—CONSTRUCTION.
   An additional liability will not be imposed on a tenant unless it is clearly within the provisions of the lease.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 98; Dec. Dig. § 37.*]

2. LANDLORD AND TENANT (§ 37*)—LEASE—CONSTRUCTION.
   The court will so construe a lease as to carry out the intent of the parties, if possible.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 98; Dec. Dig. § 37.*]

3. LANDLORD AND TENANT (§ 148*)—LEASE—CONSTRUCTION.
   Where a tenant for a term of years, who has covenanted to pay all taxes so that a certain net rental shall be received by the landlord, has paid all taxes, so that the landlord has received the rental reserved without deduction, an additional liability for taxes assessed but not payable before the term expired cannot be imposed.
   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 520–532;  Dec. Dig. § 148.*]
   Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Action by Charles F. Ayer against Paul J. Bonwit.   From a judgment for plaintiff, defendant appeals.   Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Fernando Solinger, of New York City, for appellant.
Alexander S. Andrews, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

INGRAHAM, P. J. On the 7th of March, 1900, Charles F. Ayer, as landlord, rented to the defendant certain real premises known as No. 20 West Twenty-Third street, in the city of New York, with the appurtenances, for the term of ten years from the 1st day of May, 1902, at the yearly rent or sum of $20,000 for the first two years and $20,500 for the following eight years. In said lease the defendants covenanted that "in addition to said rent they will pay all taxes, assessments and Croton water rates as may be assessed against said property so that the said rental above referred to shall yield a net rental to Charles F. Ayer." In the year 1902, the first year of the term demised to the defendant, the taxes upon this property, which had not been assessed at the time of the making of the lease, but which became payable presumably on the 1st of October, 1902, were paid by the tenant, so that the plaintiff received the net rental of $20,000 for that year. Each succeeding year the taxes were paid when payable, down to the year 1911. So for each year the plaintiff received the stipulated rental without deduction. In the year 1912, the lease expiring on or before the 1st of May in that year, the property was assessed for taxation at $302, which assessment was completed prior to the 1st of January, 1912. After the books, called the "Annual Record of Assessed Valuation of City Property," wherein said assessments were entered, were completed, they were open for public inspection, examination, and correction, and on objection made to this assessment the board of taxes and assessments reduced the assessed valuation of the property to $273,000, at which amount the property was assessed for taxation for the year 1912. This amount was certified to the board of aldermen on the 1st day of March, 1912, and thereafter, and prior to the 1st day of May, 1912, an ordinance was passed by the board of aldermen ratifying and confirming the assessment and fixing the tax for the year 1912 at $4,995.90, and the rolls were delivered to the receiver of taxes, who was required to collect from the several persons the several sums mentioned and to pay the same from time to time, when collected, to the chamberlain of the city of New York. Under the provisions of the charter (section 914), as amended by chapter 455, Laws of 1911, one-half of all taxes upon real estate were due and payable on the 1st day of May, 1912, and the remaining and final one-half were due and payable on the 1st day of November, 1912, and such taxes could not be paid before the 1st day of May, 1912. These facts as to the assessment of taxes were alleged in the complaint and admitted in the answer. Upon the trial the plaintiff introduced the lease in evidence and waived all taxes, except the proportion of the annual tax for the four months of the year 1912, when the lease was in force; that is to say, one-third of the total tax assessed for the year 1912, amounting to $1,665.30. The defendant then introduced in evidence the lease made by the plaintiff to the Pierce Rupert Company, dated January 2, 1912, of the same premises for the term of one year, commencing on May 1, 1912. This lease required that the lessee should pay to the lessor all taxes which might be assessed and become due and payable during the term demised; said payment by the lessee to the lessor to be made as follows:

"The taxes which become·a lien on May 1, 1912, shall be payable to the les-
sor on November 1, 1912, and the taxes which become a lien on November 1,
1912, shall be payable on the first day of each and every month commencing
November 1, 1912, up to the end of the term in equal monthly payments."

This evidence was objected to by plaintiff, and was only admitted as
a practical construction by the plaintiff of the obligation of the de-
fendant as to taxes for the year 1912. By the lease between the plain-
and the defendant, the defendant undertook to pay, in addition to the
rent, "all taxes, assessments and Croton water rates as may be as-
sessed against said property so that the said rental above referred to
shall yield a net rental to Charles F. Ayer." By this agreement the de-
fendant did not covenant to make a payment of the taxes to the plain-
tiff (the landlord). There was no obligation of the tenant in regard
to the payment of the tax except the undertaking that he would pay
and discharge any tax imposed upon the property, so that the landlord
should receive the rental reserved in the lease as a net rental. If there
was no tax assessed which would reduce the net rental to the landlord
below the sum reserved in the lease, there would be no obligation of
the tenant to make payment of the taxes for 1912 to anybody. When
the lease commenced in 1902, four months of the current year had
passed. No tax had been assessed for that year, but subsequently a
tax was assessed payable October 1, 1902, which undoubtedly the de-
fendant was bound to satisfy and discharge, otherwise the rent re-
served for that year from May 1, 1902, to May 1, 1903, would have
been reduced by the amount of the tax that would become a lien upon
the premises, although, as a matter of fact, four months of the cur-
rent year after which the tax was imposed had passed before the term
·demised had commenced. For the last year of the term, which com-
menced on the 1st day of May, 1911, and ended on the 1st day of May,
1912, the plaintiff had received a net rental of $20,500, the rent re-
served by the lease, so no tax was assessed for that year which reduced
the rent received by plaintiff below the rent reserved by the lease. The
liability of the defendant must depend upon the obligation that he
assumed when he executed the lease under which he held the prem-
ises, and of course that must depend upon the construction to be given
to this provision of the lease.

By the lease the defendant did not undertake to pay the taxes which
should be assessed against the property during the term demised, nor
did he agree to pay any particular tax which should become a lien
during the term or at any other time; what the defendant agreed to
do was to pay, in addition to the rent reserved, "all taxes, assessments
and Croton water rates as may be assessed against said property so that
the said rental above referred to shall yield a net rental to Charles F.
Ayer." The cases relied upon by the court below and by the respond-
ent upon this appeal as to when a lien for the payment of the tax is
imposed do not apply. What it seems to me the parties clearly in-
tended was that the tenant would pay any tax, assessment, or Croton
water rates that became a lien upon the property, and which the land-
lord would be required to pay, which would ·reduce the rental that he
would receive below the rent reserved by the lease, and it was not

important when a tax was assessed or when it became payable. What the plaintiff was entitled to was the rent reserved as a net rent during the term, and that the plaintiff has received. To impose upon the defendant the obligation to pay taxes for the year 1912 would increase the net rent that the plaintiff received above that reserved to him by the lease, which it seems to me would violate the clear intention of the parties.

[1, 2] The general principle in the construction of instruments of this character is well settled that an additional liability will not be imposed upon a tenant unless it is clearly within the provisions of the lease; but "it has been held in many cases that the court will so construe a lease as to carry out the intention of the parties, if possible." Buchanan v. Whitman, 151 N. Y. 253, 45 N. E. 556.

[3] Where, as in this case, the obligation of the tenant depends entirely upon a covenant that he would pay, not a particular tax or lien, but all taxes that may be assessed against the property, so that a certain net rental should be received by the landlord, and where he has paid all taxes or charges assessed against the property which insures the landlord the rental reserved without any deduction or obligation, the tenant has complied with this covenant, and an additional liability cannot be imposed.

I agree with the court below as to the other items to which the plaintiff claimed to be entitled, and, as under this view of the lease the plaintiff has received the net rental which the parties contemplated he should receive, I do not think that the plaintiff was entitled to a recovery. I think, therefore, that the motion made by the defendant at the end of the testimony to direct a verdict in favor of the defendant should have been granted. The parties stipulated that the jury be dismissed and that a verdict might be directed in the absence of a jury with like force and effect as if the jury were present. It was conceded that there was no question of fact for the jury. If my construction of this lease is correct, the defendant was entitled to the direction of a verdict, and on this appeal such a verdict should be directed in favor of the defendant.

The judgment appealed from is therefore reversed, with costs to the appellant, and judgment directed for the defendant.

McLAUGHLIN, LAUGHLIN, and HOTCHKISS, JJ., concur. DOWLING, J., dissents.