St. Regis Restaurant, Landlord, Appellant, *v.* Augustin J. Powers, Tenant, Respondent.

Supreme Court, Appellate Term, First Department, May 20, 1926.

**Landlord and tenant — summary proceedings to dismiss for non-payment of rent — lease contained clause by which tenant, defendant's assignor, agreed to pay any increase in insurance rates or premium on premises or on stock — lease permitted landlord to add said increase to rent to become due — clause construed as personal one, inuring only to plaintiff's assignor — defendant not liable for additional charges — " stock," defined — plaintiff's petition dismissed.**

A clause in a lease, by which defendant's assignor agreed to " pay any increase in the first insurance rates or premium " on the premises occupied by the tenant " or on the stock " of its landlord, plaintiff's assignor, and in the event that such increase was not paid the landlord would be entitled to pay it and add the amount so paid to the rent to become due under the lease, cannot be construed as imposing upon the defendant herein the liability of paying the increased insurance as additional rent, since the covenant was a personal one and inured only to the benefit of plaintiff's assignor, the original landlord, particularly where the whole tenure of the covenant, read in the light of the nature of the actual occupancies of the premises emphasizes its personal character. Moreover, there was nothing in the lease to show that any express provision therein ran in favor of the landlord's assigns.

Plaintiff's petition in summary proceedings to dispossess for non-payment of rent, added, on defendant's failure to pay the excess insurance premium, should be dismissed.

The word " stock," as used in the lease, means " goods and wares of a merchant or tradesman, kept for sale and traffic," and cannot be deemed to include fixtures.

Bijur, J., dissents, with opinion.

Appeal by the landlord from a final order of the Municipal Court, Borough of Manhattan, Third District, dismissing a petition in summary proceedings for non-payment of rent.

*Joseph G. Abramson* [*Henry Waldman* of counsel], for the appellant.

*Powers & Kaplan* [*David A. Ticktin* of counsel], for the respondent.

LEVY, J.   This case involves the construction of a provision of a lease made by the Regal Shoe Company, the landlord's assignor, to Foto Repro Company, the tenant's assignor, which reads as follows: " And the Tenant further covenants and agrees that it will pay any increase in the first insurance rates or premiums on said building or on the stock of the Landlord contained in the store occupied by it, or in the basement thereunder, which increase shall be caused by the character of the occupation of said premises by said Tenant; and in case the Tenant shall omit to pay such increase in insurance rates and premiums the Landlord shall be entitled to pay the same and the amount so paid shall be added to the rent then or next to become due hereunder."

The landlord has brought summary proceedings by reason of the tenant's failure to pay excess insurance in the sum of $1,247.56 as additional rent.   The tenant's defense is that the covenant was a personal one which inured only to the benefit of the original landlord, the Regal Shoe Company.   The court below ruled in favor of the tenant's construction, and this appeal is taken from such determination.

The general rule for interpreting leases is that they must be construed most favorably to the lessee.   (*Moskowitz* v. *Diringen*, 48 Misc. 543.)   Even if this principle should be accepted with qualifications, nevertheless the landlord's interpretation of the clause in question seeks to burden the tenant with an additional obligation.   Such additional liability, however, will not be imposed upon a tenant unless it is clearly within the provisions of the lease. (*Ayer* v. *Bonwit*, 161 App. Div. 122.)

It is true that a covenant which binds a lessee to keep buildings insured is one running with the land.   (*Northern Trust Co.* v. *Snyder*, 76 Fed. 34.)   The reason for this principle is that such insurance is necessary for the preservation of the property itself. But the situation is otherwise here.   Obviously the lessee was under no obligation to carry insurance upon the building; the landlord discharged this duty.   But as regards any increased expense in this direction arising from the character of the tenant's occupancy, the landlord's desire to be personally relieved from the increased burden led to the drafting of the clause under construction.

A careful reading of that paragraph in the lease in the light of the nature of the actual occupancies will emphasize its personal character.   The original landlord occupied the store and basement for merchandising shoes, and desiring to protect itself from paying increased insurance rates on its stock of goods, as well as on the building, it imposed the burden of a possible increase in rates, due

to the nature of the lessee's business, upon the latter. That this safeguard was not pre-eminently designed for the preservation of the property itself is further evident from the consideration and the application of the following test contained in the case of *507 Madison Ave. Realty Co., Inc.,* v. *Martin* (200 App. Div. 146, 151): " It seems to me the real test by which we are to determine whether the right  *  *  *  was a covenant running with the land or merely a provision for the benefit of the lessor and personal only to himself, is as to whether that provision was alone beneficial to the original landlord, regardless of his continued ownership of the property, or whether such a provision was beneficial to the reversioner as such." The clause was clearly for the benefit of the original landlord, regardless of his continued ownership; for if he had sold the property and continued to occupy the store and basement, the tenant's obligation to pay increased insurance rates to the original landlord, at least on the stock, occasioned by the nature of the tenant's occupancy, would have continued.

Furthermore, the original landlord, as a shoe dealer, disregarded any possible increase of insurance rates on its fixtures, and, so far as its business insurance rates were concerned, limited such increase to " stock." The appellant urges that the term " stock " includes other personal property on the premises, such as store fixtures, as well as merchandise. But such an interpretation of the word is strained. Black's Law Dictionary defines " stock " as follows: " In mercantile law. The goods and wares of a merchant or tradesman, kept for sale and traffic." And Bouvier's Law Dictionary similarly defines it as the goods and wares a merchant has for sale and traffic. Furthermore, in *Gates* v. *McKee* (13 N. Y. 232) a guaranty for what stock a certain shoemaker had or might thereafter want, was held to be a guaranty for the *supply of materials* for the business of a debtor. It is clear that apart from the application of the strict rule of construction, the word " stock " cannot be deemed to include " fixtures."

It is unfortunate for the present landlord, a restaurant keeper, that " stock " is a negligible factor compared with " fixtures," while in the shoe business the reverse condition obtains. But this very situation emphasizes the fact that the original landlord in stipulating for the tenant's payment of increased insurance rates had in mind solely the exigencies of its own business and gave no thought to the position of its successors. It thus lends weight to the interpretation of the covenant as a personal one.

Then, too, the limitation of liability of the lessee to *first* increases in insurance rates is not without significance. Indeed, *it indicates that the original landlord was not thinking of its successors or*

of the benefit to the property resulting from the clause involved. What apparently was uppermost in the thought of its officers was the imminence of increased rates due to the nature of the occupancy of the tenant, against which it desired to be indemnified. While it is true that the covenant couples the liability to pay increased insurance on the stock with the obligation to pay the increase on the building, the latter does not constitute a severable covenant running with the land, because the intent of the landlord was to be saved harmless from any increase whatever in his insurance expense. The provision, therefore, was obviously framed without any remote thought of possible benefit to its successors.

Our attention has been called, however, to the case of *Frank* v. *Auerbach* (59 Misc. 475) as possibly countenancing an opposite conclusion. There, a tenant had stipulated with his lessor to pay " any and all increase of insurance on said premises above the premium charged on the 21st day of March, 1900." The subtenant assumed the obligations of the lease. But he refused to pay the increased rates because the policies were in the name of the owner and not in the name of the plaintiff, who was the defendant's lessor. The court held that the defendant's obligation was to pay any and all increase of insurance on the premises, " meaning thereby without respect to the name of the person to whom the insurance should be made out, whether to the Smiths, as owners, or to someone else as mortgagee, provided only it was insurance on the premises in question." (Id. 479.) In that case, however, unlike the situation here, the original landlord who had imposed the covenant was still the owner at the time the controversy arose and in a position to enforce it against the subtenant who had assumed its obligations. The decision did not, therefore, involve the determination of the personal or impersonal character of the covenant.

In connection with all the other circumstances already mentioned, it is of some moment that there is an absence in the lease of any express provision making it run in favor of the landlord's assigns. Although in itself not decisive, the absence of such a stipulation may be considered as an aid in arriving at the intention of the parties and as supporting the construction of the covenant as a personal one. (*Masury* v. *Southworth*, 9 Ohio St. 340.)

Final order affirmed, with twenty-five dollars costs.

LYDON, J., concurs.

BIJUR, J. (dissenting). I dissent. My interpretation of the clause in the lease is that the tenant agreed to pay in the form of additional rent the increase in insurance rates on the building.

The case was tried informally, evidently in order to procure a ruling on the law. The figures in the complaint and those mentioned in the opinion of the learned trial judge do not quite correspond. According to the latter, however, the increase in building insurance was $758.17 and in the stock insurance $28.11. It seems to me to be quite clear that the items are separable under the contract and that the agreement to pay increased insurance rates on the building may be said " to run with the land," and that the agreement to pay the increase on the stock insurance, while not precisely " personal " in the ordinary acceptation of the term, was one relating solely to a particular thing, namely, the stock of the then landlord contained in the building and that it did not apply to a different stock of another landlord, whether contained in the building or not.

In my opinion, therefore, the tenant was in default for not having paid the increased insurance on the building, $758.17. I agree that neither rent insurance nor fixture insurance is provided for by the covenant.

The final order should be reversed and a new trial granted, with costs to appellant to abide the event.