St. Regis Restaurant, Inc., Appellant, *v.* Augustin J. Powers, Respondent.

First Department, February 4, 1927.

Landlord and tenant — summary proceedings to dispossess for default in rent — original parties stipulated in lease that tenant would pay any increase in first insurance rates on building and stock due to hazardous business of tenant, and if such increase were not paid, landlord could pay same and add amount thereof to rent — no agreement that assignees would be bound by stipulation — present parties are successors in interest of original parties — proceeding is on theory of default in payment of rent — covenant viewed solely as one to pay increase in insurance does not run with land — covenant, however, is construed as one providing for increased rent, and as such, runs with land and binds succeeding parties — landlord is entitled to final order.

In summary proceedings to dispossess, brought on the theory that the tenant had failed to pay his rent, it appears that the original lease of the entire building was made to the assignor of the plaintiff, and that the lease in question was made to a subtenant, the assignor of the defendant. The lease in question contained a clause to the effect that the tenant would pay any increase in first insurance rates or premiums on the building and stock due to the hazardous business of the tenant, and that in case the amount was not paid, the landlord could pay the same and add the amount thereof to the rent then or next to become due under the lease. The lease did not provide that it would bind the assignees of the parties thereto.

The clause in question, relating to the increased insurance premiums, viewed solely as one for the payment of the increased insurance premiums by the original tenant, was personal to that tenant and did not run with the land so as to bind the defendant herein.

But the clause is construed as a provision for increased rent, in case the hazardous business of the tenant or subtenant caused a raise in the insurance premiums, and as so construed it is a covenant running with the land and is binding on the defendant.

The phrase "first insurance rates or premiums" means the premiums already paid or being paid by the landlord at the time the lease was made, and the clause obligated the lessee to pay the difference between such premiums already paid or being paid and the increased premiums caused by the conduct of a hazardous business by the tenant.

First Department, February, 1927.    [Vol. 219

APPEAL by the plaintiff, St. Regis Restaurant, Inc., from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 20th day of May, 1926, affirming a final order of the Municipal Court of the City of New York, Borough of Manhattan, Third District, in favor of the defendant.

*Frank C. Laughlin* of counsel [*Henry Waldman* with him on the brief; *Joseph G. Abramson*, attorney], for the appellant.

*David A. Ticktin* of counsel [*Abraham Kaplan* with him on the brief; *Powers & Kaplan*, attorneys], for the respondent.

O'MALLEY, J. This is a summary proceeding instituted by the landlord, St. Regis Restaurant, Inc., to recover possession of a loft located in the building at the southwest corner of Broadway and Fiftieth street. The original lease by which the obligations of the parties are to be determined was made March 4, 1918, by the Regal Shoe Company, which then held a lease of the whole building, to the Photo Repro Company. The term was for a period expiring April 30, 1928. Subsequently on November 17, 1921, and with the consent of the then landlord, Regal Shoe Company, the Photo Repro Company assigned its interest to the defendant tenant, Augustin J. Powers, who assumed all obligations of his assignor. He thereafter entered into possession. Subsequently and by various assignments the petitioner, St. Regis Restaurant, Inc., succeeded to the rights of the original landlord, the Regal Shoe Company.

In the lease in question the assignees of the parties were not mentioned and the question here involved is whether the obligations of certain covenants contained in the lease were personal to the original parties or whether they inure to the benefit of the assignees, and more particularly to the present landlord. The landlord by this proceeding is seeking to enforce a covenant on the part of the original lessee to pay increased insurance premiums due to the nature of its occupancy of the premises. The provision of the lease which requires construction is as follows: " And the Tenant further covenants and agrees that it will pay any increase in the first insurance rates or premiums on said building or on the stock of the Landlord contained in the store occupied by it, or in the basement thereunder, which increase shall be caused by the character of the occupation of said premises by said Tenant; and in case the Tenant shall omit to pay such increase in insurance rates and premiums the Landlord shall be entitled to pay the same and the amount so paid shall be added to the rent then or next to become due hereunder."

In March, 1918, when the lease was made, the original lessor, Regal Shoe Company, occupied the ground floor and basement of the building in connection with its retail shoe business. Its tenant, Photo Repro Company, was engaged in a photographic reproduction business which in fire insurance is considered extra hazardous because of the use of combustible material in connection therewith. The present landlord appears to be engaged in the restaurant business, though not, in so far as appears, in any part of the building where the demised premises are located. The present tenant, or more particularly, his subtenant, the Powers Photo Engraving Company, is also apparently engaged in a business likewise hazardous, as was that of the original lessee.

By its petition the landlord alleged an increase in insurance premiums and further alleged that the amount due from the tenant on account thereof as of October 1, 1924, was the sum of $1,143.24. It alleged a demand upon the tenant for the payment of such premiums, his refusal to pay, and further that the sum specified was due to the landlord under the lease for increased insurance rates, " plus the sum of Three hundred thirty-three and 33/100 ($333.33) Dollars reserved rent, as and for rent of the said premises " from October 1, 1924, to October 31, 1924; that no part thereof had been paid, except the sum of $333.33, leaving an unpaid balance in the sum of $1,143.24; that the petitioner had made personal demand upon the tenant since the same became due " and that said tenant has made default in the payment of said rent pursuant to the agreement under which the said premises are held." For the purposes of the trial it seems to have been conceded that the amount of increased premiums paid to and including January 1, 1925, was the sum of $1,240.78, divided as follows: Building insurance, $758.17; stock insurance, $28.11; rent insurance, $304.76; and fixture insurance, $149.74. It appears that while the tenant willingly paid the monthly rent reserved, he refused to pay the amount of the increased insurance premiums. All facts essential to plaintiff landlord's right of recovery are taken as established except the questions arising under the construction of the clause above quoted.

The first and main question to be decided is whether the covenant under consideration is one running with the land, or is purely personal to the original parties to the lease. If it is a covenant running with the land, it will inure to the benefit of the plaintiff landlord, notwithstanding that the original agreement did not provide that it would be binding on or inure to the benefit of the assigns of the original parties. (Real Prop. Law, §§ 223, 257.) These sections on the other hand will not avail the appellant if

the covenant is a personal one. (*Dolph* v. *White*, 12 N. Y. 296; 1 McAdam Landl. & Ten. [4th ed.] 863, 864; 2 id. 1570; Fowler's Real Prop. Law [3d ed.], 761.)

The learned trial justice and a majority of the justices of the Appellate Term have construed the covenant as personal. The dissenting view in the latter court is to the effect that the terms of the covenant are separable and that the portion relating to increased premiums on the building may be deemed as a covenant running with the land. (127 Misc. 338.)

In the view we take of the question we cannot agree that the covenant to pay increased insurance premiums as such is one running with the land. We are of opinion, however, that as a covenant to pay additional rent as such it may be so regarded.

The test applicable to a determination of the first question is well recognized. If the covenant does not touch or concern the land, is merely collateral thereto, and for the benefit of the lessor and personal only to himself, regardless of his continued ownership of the property, it is a personal covenant and does not run with the land. (1 Tiffany Real Prop. [2d ed.] 177; *507 Madison Avenue Realty Co., Inc.,* v. *Martin,* 200 App. Div. 146, 151; affd., 233 N. Y. 683). Moreover, while intention may be material with respect to constituting the covenant a personal one, it is immaterial with respect to constituting it a covenant running with the land if in fact it is not of such character. (Tiffany Real Prop. *supra,* 179; *Wilmurt* v. *McGrane,* 16 App. Div. 412.)

The question here, therefore, is whether the covenant to pay insurance as such is of such a character as requires it to be construed as one running with the land. We think it cannot be so regarded. True, it relates in part to insurance premiums on the building. If it were confined to that alone, a question might be raised as to whether it would run with the land. It is to be observed, however, that it also includes premiums upon a particular stock of merchandise owned by the original lessor who was then carrying on business in the building of which the demised premises were a part. It was only natural for such lessor to protect itself against an increased cost of insurance upon its valuable stock by reason of the hazardous business conducted by the lessee. Moreover, it is now sought to extend the covenant to cover increased premiums on fixtures and for rent losses. Clearly, its language cannot be so extended.

It is to be observed that the covenant in question is wholly unlike an obligation on the part of the lessee to insure or a covenant on the part of the lessor to devote the proceeds of an insurance loss to a reconstruction of the building.

Our conclusion is that in so far as the covenant was one to pay increased cost of insurance, as such, either on the building or the stock, it was personal to the original lessor and for its benefit only.

As a covenant to pay additional rent, however, it would clearly run with the land. The clause in question must be considered in connection with all the facts and surrounding circumstances. We think that what the lessor had in mind was to assure to itself the net rental reserved in the lease. To accomplish this, provision was made that in the event there resulted increased cost of insurance, by reason of the nature of the occupancy of the premises, such cost, if not paid by the lessee, might be added as rent to the amount reserved. The covenant provided specifically that in the event the tenant should omit to pay such increased insurance rates, the landlord " shall be entitled to pay the same and the amount so paid *shall be added to the rent* then or next *to become due hereunder.*" By this provision it was intended that the amount of increased premiums was to be considered as rent and as such added when liquidated to the constant liquidated rent reserved.

The proceedings below went upon the theory that rent was due and unpaid. The petition admitted payment of the stipulated amount of rent reserved in the lease, and alleged a balance due as rent on account of the excess premiums. The proceeding, therefore, was one clearly for non-payment of rent. In this view of the case the landlord was clearly entitled to a final order for the reason that concededly such excess premiums were unpaid.

There remains the question as to the meaning of the words " first insurance rates or premiums " as used in the clause under consideration. We think it is quite plain that by the word " first " was intended the premiums already paid or being paid by the lessor at the time the lease was made and that the original tenant obligated himself to pay the difference between such premiums already paid or being paid and the increased premiums whatsoever they might be throughout the term of the lease. To give any other construction would result in depriving the landlord of full protection for the reason that after the payment of the first increased premium, the burden of paying such increase during the balance of the term would fall upon it.

The determination should be reversed, with costs in this court and in the Appellate Term, and a final order in favor of the petitioner granted, with costs.

Dowling, P. J., Merrell, Martin and Proskauer, JJ., concur.

Determination reversed, with costs and disbursements to the appellant in this court and in the Appellate Term, and final order granted in favor of petitioner, with costs.