JOSIAH T. MILLER, Respondent, *v.* THOMAS J. CLARY et al., Appellants, Impleaded with Another.

*Real property* — deed — conveyance of land with covenants to furnish water power to grantee — covenants construed and held to be personal to grantor and, hence, unenforceable against his successors in title.

1. The general rule, subject, however, to certain exceptions and limitations, is that affirmative covenants accompanying conveyances of land are not enforceable against subsequent owners.

2. The common grantor of plaintiff and defendants, being the owner of certain lands upon which was erected a flouring mill operated by water drawn from the river on which it was situated, conveyed to plaintiff's grantors a part of these lands, together with sufficient power from a wheel in the mill to turn a shaft and propel machinery, as therein described. The conveyances also contained the following covenant on the part of the grantor: "Said party of the first part shall keep said wheel in said mill in good condition, and operate the same economically, and construct and maintain said shaft of proper dimensions to the west line of said lot, affording said party of the second part a good connection

therewith at his west line." Thereafter the original grantor conveyed the mill property by deed, "excepting and reserving, however, all such rights and privileges as have been conveyed by the party of the first part," and subsequently the property was conveyed to these defendants by deed containing the same exceptions and reservations. The object of this action by plaintiff, who has succeeded to the title of the original grantee, is to secure a construction of the covenants and stipulations in the deeds, to compel the defendants to keep and observe such covenants and stipulations, and to require them to furnish power at the plaintiff's buildings and convey such power at their own cost and expense, and by their own appliances, to the plaintiff's buildings. *Held*, that plaintiff has the right under his grant to take power from a wheel in the defendant's power plant when the wheel is in operation, but that the covenant to construct and maintain the shaft to transmit the power was the personal undertaking of the original grantor and does not run with the land or create an equitable liability on the part of the defendants.

English and American cases collated and considered.

*Miller* v. *Clary*, 147 App. Div. 255, modified.

(Argued December 10, 1913; decided December 30, 1913.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 28, 1911, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This is an action to construe a deed granting an easement and to enforce certain covenants relating to the easement.

In and prior to the year 1872, the Phœnix Mills was seized in fee and possessed of certain lands on the Seneca river in the village of Seneca Falls. There was erected on such lands a flouring mill operated by water drawn from the river.

The land to the east of the mill property and lower down the river was also owned by the Phœnix Mills. This land, in the year 1872, the mill company divided into four lots, and on May 18 of that year conveyed the easterly lot, which was taken off the easterly end of the

land, to one Zalinski. The deed, after describing the property conveyed, continued as follows:

"Together with sufficient power (subject to the elements) from a wheel in the old Stone Mills or Jewett building to turn a shaft and propel machinery in the basement of any building to be erected on the premises, hereby conveyed not requiring more than fifteen horse power, provided, however, that such machinery shall be confined to the basement stories of such building and shall not be used elsewhere nor shall said shaft ever be used for any other purpose than operating machinery in said basement and provided also that said shaft shall be put up at the sole expense of said party of the second part and shall be properly connected with the shaft running from said mill and shall be made and put up in a manner to be approved by the said party of the first part, and said shaft and machinery shall at all times be kept in good condition by said party of the second part and shall be operated in a proper and economical manner and said power is to be used in common with all other persons who shall be entitled to power from said wheel."

Following the clause quoted, the deed contained certain exceptions and reservations, and then the following covenant on the part of the grantor: "Said party of the first part shall keep said wheel in said mill in good condition, and operate the same economically, and construct and maintain said shaft of proper dimensions to the west line of said lot, affording said party of the second part a good connection therewith at his west line."

Subsequently, in the same year, the Phœnix Mills conveyed to different individuals the two lots to the west of the Zalinski lot, and the deed in each instance contained practically the same provisions as the Zalinski deed, except that the grantee agreed to construct and maintain the shaft to transmit power over the land conveyed to him to the adjoining lots on the east thereof. Still later,

9

in the same year, the Phœnix Mills conveyed the fourth lot, which adjoins the mill property, to a fourth person by deed which contained practically the same clauses as the Zalinski deed.

Thereafter the Phœnix Mills for a time transmitted power under the provisions of its deeds aforesaid to lots one, two and three. No power was transmitted to the fourth lot. Since about the year 1890 no power has been transmitted to any of the lots, and the appliances for conveying the power have been destroyed by the elements or otherwise.

In 1873 the Phœnix Mills conveyed the mill property by deed, "excepting and reserving, however, all such rights and privileges as have been conveyed by the party of the first part to" Zalinski and the other grantees aforesaid. Subsequently the property was conveyed to the defendants Clary by deed, containing the same exceptions and reservations.

The plaintiff is, and for several years has been, the owner of all four lots to the east of the mill property conveyed to Zalinski et al. There is now upon the mill property an electric power plant operated by the defendant, the Geneva-Seneca Electric Company, under lease from the owners. There are several wheels in the power plant which are run by water from the Seneca river.

The object of this action is to secure a construction of the covenants and stipulations in the deeds to Zalinski and others, to compel the defendants Clary to keep and observe such covenants and stipulations, and to require said defendants to furnish "power at the plaintiff's buildings and convey such power at their own cost and expense, and by their own appliances, to the plaintiff's buildings." The judgment was in favor of the plaintiff on all points.

There are many other facts found by the court below, but the foregoing is a sufficient statement for present purposes.

*William S. MacDonald* for appellants. The provisions as to power in the deeds to plaintiff's predecessors in title did not amount to covenants running with the land which was subsequently deeded to defendants, but constituted, at most, agreements enforceable against Phœnix Mills or easements with which defendants might not interfere; they did not create obligations of affirmative action or burdens of performance assumed by defendants or imposed upon the lands which defendants acquired; and defendants did not take a title subject to the performance of such provisions but a title from which such rights and privileges were expressly excepted and reserved. (*Spencer's Case,* 5 Coke, 16; Gerard on Titles [4th ed.], 515, 523; *Cole* v. *Hughes,* 54 N. Y. 444; *Hills* v. *Miller,* 3 Paige, 254; *Watertown* v *Cowen,* 4 Paige, 510; Jones on Easements, §§ 838–841; *Douglas* v. *Coonley,* 84 Hun, 158.)

*Charles A. Hawley* for respondent. The covenants to furnish power are obligatory upon the defendants Clary as successors in title to the Phœnix Mills, the original grantor, and inure to the benefit of the plaintiff as successor in title to Zalinski, Desky, Howe and Johnson, the original grantees. (*Nye* v. *Hoyle,* 120 N. Y. 195; *Trustees* v. *Lynch,* 70 N. Y. 440; *Hills* v. *Miller,* 3 Paige, 254; *Quackenbush* v. *Lansing,* 6 Johns. 49; *Gould* v. *Partridge,* 52 App. Div. 40; *Brown* v. *Mackay,* 57 N. Y. 684.)

CUDDEBACK, J. There can be no question but that the words "Together with sufficient power (subject to the elements) from a wheel in the old Stone Mills or Jewett building to turn a shaft and propel machinery" on the grantee's premises, contained in the deeds from the Phœnix Mills to Zalinski and others, constituted the grant of an easement, nor any doubt but that the privilege granted was for the benefit of the land conveyed, and an easement that ran with the land. (*Nye* v. *Hoyle,* 120 N. Y. 195.)

The question arises on the subsequent covenant to

transmit the power, contained in the following provision: "Said party of the first part shall keep said wheel in said mill in good condition and operate the same economically and construct and maintain said shaft of proper dimensions to the west line of said lot, affording said party of the second part a good connection therewith at his west line."

There is now a wheel operated in the defendants' power plant which answers to the language of the deeds, and, therefore, we are not concerned here with the covenant of the grantor to keep the wheel in good condition and operate the same.

But there is no shaft or other contrivance to carry power from the wheel to the lands conveyed. By the judgment appealed from it is decreed that the covenants in the deed of the Phœnix Mills to the plaintiff's predecessors in title, whereby the grantor undertook to "construct and maintain a shaft of proper dimensions to the west line of " the plaintiff's land, is a covenant binding on the defendants, and the judgment orders them to comply with and fulfill such covenant.

The covenant to construct and maintain the shaft is known in the law as an affirmative or positive covenant. It compels the covenantor to submit not merely to some restriction in the use of his property, but compels him to do an act thereon for the benefit of the owner of the dominant estate.

It is the established rule in England that such a covenant does not run with the land and cannot be enforced against a subsequent owner of the servient estate, either at law or in equity. (*Haywood* v. *Brunswick Bldg. Society*, L. R. [8 Q. B. Div.] 403; *London & S. W. Ry. Co.* v. *Gomm*, L. R. [20 Ch. Div.] 562; *Austerberry* v. *Corp. of Oldham*, L. R. [29 Ch. Div.] 750; Halsbury, Laws of England, vol. 11, pp. 237, 248.) There are, however, certain exceptions to this rule, as covenants to repair fences on boundary lines; to repair private ways, and covenants in leases. (Ib.)

Some of the courts of this country have taken a different view, notably the Massachusetts Supreme Court. In *Whittenton Mfg. Co.* v. *Staples* (164 Mass. 319) it is held that a stipulation in the deed of a mill site that the grantee and his assigns shall pay one-fifth of the damages caused by flowage from a dam, is a covenant runing with the land and binds the grantee, his heirs and assigns. Pomeroy in his work on Equity Jurisprudence takes the same view, namely, that affirmative covenants may be enforced in equity, and criticises the English decisions. (3 Pomeroy Eq. Jurisprudence [3rd ed.], § 1295.)

The question as to the force of such positive covenants was raised in this court by counsel in the case of *Nye* v. *Hoyle* (*supra*), but was not decided. In that case a subsequent grantee rebuilt a dam, pursuant to a covenant of his grantor, contained in a contract for the use in common by the parties to the contract of the water in a pond, and he sought to recover a part of the expense of rebuilding from the other users of the water. The court held that the covenant in the contract required the plaintiff's grantor to rebuild the dam at his own expense, and hence the plaintiff failed to recover. The court then said it was not necessary to consider whether there was an equitable obligation on the part of the plaintiff to rebuild the dam.

In *Hurley* v. *Brown* (44 App. Div. 480) there was a covenant in a deed requiring the grantee to erect on the land conveyed a substantial two-story dwelling house. The court (Judge CULLEN writing the opinion) doubted whether this covenant to erect a building ran with the land so as to be enforceable against a subsequent grantee, but the case went off on another point.

In *Kidder* v. *Port Henry Iron Ore Co.* (201 N. Y. 445; 207 N. Y. 768) it was held by this court that a clause in the deed to a railroad company of its right of way, whereby the grantee agreed to draw a freight car loaded

with grain, free of charge, between certain points on its railroad, for the benefit of the grantor, could not be enforced by the purchaser from the grantor against a railroad company succeeding to the interests of the grantee.

In *Reid* v. *McCrum* (91 N. Y. 412) it was held that a covenant by a mortgagor to insure the buildings on the mortgaged premises does not run with the land.

On the other hand, it has been held in this state that certain positivè covenants, which are mainly in line with the covenants excepted by the English courts from the rule adopted there, do run with the land. As, covenants to build fences along boundary lines (*Satterly* v. *Erie R. R. Co.*, 113 App. Div. 462); covenants relating to party walls (*Crawford* v. *Kroellpfeiffer*, 195 N. Y. 185); covenants to provide railway crossings (*Day* v. *N. Y. C. R. R. Co.*, 31 Barb. 548; *Post* v. *West Shore R. R. Co.*, 123 N. Y. 580); covenants in leases to pay rent or repair buildings on the demised premises (*Allen* v. *Culver*, 3 Den. 284)..

The cases cited from the reports of this state indicate that the trend of opinion is with the English decisions.

But there is another case on which the plaintiff relies, to wit, *Denman* v. *Prince* (40 Barb. 213). In *Denman* v. *Prince* the owner of lands on which was situated a gristmill and a sawmill conveyed the gristmill to the plaintiff Denman, and at the same time executed a separate agreement under seal, granting to Denman the use of water to run the gristmill, and covenanting that he would at all times be at an equal expense in keeping up and repairing the dams in the stream from which the water was obtained. Later on he conveyed the sawmill to the defendants, subject to the rights and privileges previously conveyed to Denman. Thereafter the plaintiff repaired the dams, and the suit was to recover from the defendants their proportionate part of the expense. The court held that the covenant to share in the costs of

repair ran with the land and was binding on the defendants, and, further, that the parties to the action were tenants in common of the mill privilege, and were jointly using the same; therefore, the defendants were bound to contribute to the expense of the necessary repairs made to the dams.

The decision in *Denman* v. *Prince* is entirely in harmony with the early English cases.   In *Cooke* v. *Chilcott* (L. R. [3 Ch. Div.] 694) the court held that a covenant by a grantee to erect a pump and reservoir and supply water to all the houses built on the vendor's land was enforceable by an injunction restraining the defendants, who had purchased the land on which the pump and reservoir were located, with notice of the covenant to refrain from allowing the work of pumping to be unperformed.

The evil and lasting effect of the decision, which would compel all persons who might thereafter become the owners of the reservoir to forever pump and supply water, led the court to practically overrule *Cooke* v. *Chilcott*, and announce the rule before referred to that affirmative covenants do not run with the land and cannot be enforced against subsequent purchasers either at law or in equity. (*Haywood* v. *Brunswick Bldg. Society ; London & S. W. Ry. Co.* v. *Gomm; Austerberry* v. *Corp. of Oldham, supra.*)

Except in *Gould* v. *Partridge* (52 App. Div. 40), which involved the same deeds involved in this action, *Denman* v. *Prince* has not been cited, so far as I can find, as an authority on the proposition that a positive covenant runs with the land.   Covenants which impose charges on land bind the assigns of the covenantor as equitable obligations.  (*Trustees of Columbia College* v. *Lynch,* 70 N. Y. 440.)  If, under the circumstances presented by the *Denman* case, the defendants had abandoned their sawmill and devoted their lands to other purposes, it would not have been equitable to compel them thereafter to bear the burden of maintaining the dams in order to provide water for

the plaintiff's gristmill. However, in *Denman* v. *Prince* the court found that the parties to the action were tenants in common of the mill privilege, and were jointly enjoying the benefit thereof. That may serve to distinguish the case from the case at bar.

I think the rule that affirmative covenants accompanying conveyances of land are not enforceable against subsequent owners is a wise one. It has its limitations as has been seen, and may require further limitation; but the present case is one in which the rule should be applied.

The plaintiff here has the right under the grant of the Phœnix Mills to take power from a wheel in the defendants' power plant when the wheel is in operation. That is an easement, and is a privilege necessary and convenient to the complete enjoyment of the plaintiff's property, having in mind the purpose for which it was conveyed. But it is not necessary, or even convenient, to the complete enjoyment of the plaintiff's property that the defendants should construct and maintain the shaft by which the power is transmitted. That work the plaintiff can do as well as the defendants, and for the purpose of performing it may enter upon the defendants' property. The only question is: Who shall bear the expense? In that view, the covenant to construct and maintain the shaft was the personal undertaking of the original grantor and does not run with the land or create an equitable liability on the part of the defendants.

I recommend that the judgment appealed from be modified by striking out the provision that the covenants in the deeds from the Phœnix Mills to Zalinski and others to construct and maintain a shaft from the wheels in the defendants' mill to the plaintiff's building inured to the plaintiff's benefit, and also by striking out the provision that the defendants comply with such covenant, and by inserting a direction that defendants permit the plaintiff to take at and from a wheel in their mill, when

the wheel is in operation, the amount of power in the judgment mentioned, and that the judgment as thus modified be affirmed, without costs in this court to either party.

CULLEN, Ch. J., WERNER, HISCOCK, CHASE, COLLIN and HOGAN, JJ., concur.          ·          .

Judgment accordingly.