RHINELANDER REAL ESTATE COMPANY, Respondent, *v.* MATTIE CAMMEYER, Individually and as Executrix of the Estate of ALFRED J. CAMMEYER, Deceased, and " CAMMEYER," Appellants.

(Supreme Court, Appellate Term, First Department, October Term — Filed November, 1921.)

Landlord and tenant — constructive eviction — sub-tenant — surrender — covenant to supply steam relates to premises and is impersonal — when waiver of right to abandon premises will be submitted to a jury.

> A covenant in a lease to furnish live steam for the necessary use of the tenant in the conduct of its business relates directly and exclusively to the premises demised and is altogether impersonal.
>
> Defendants, the lessees of plaintiff's building for a term ending February 1, 1919, sublet one of the floors for a term ending simultaneously with the main lease and covenanted to supply their sub-tenant with steam in a certain amount and at a certain pressure. The main lease was cancelled by mutual consent and an agreement entered into by which defendants, in addition to the payment to plaintiff of certain sums at fixed intervals, guaranteed that the rentals of certain named tenants, including said sub-tenant, would be paid to plaintiff until the expiration of the lease. Beginning early in January, 1919, the complaint of the sub-tenant concerning a deficiency in the supply of live steam continued from time to time and was followed by plaintiff's promises of improvement. On August 26, 1918, the sub-tenant by letter formally notified plaintiff that

Appellate Term, First Department, November, 1921.    [Vol. 117.

because of the failure of steam it had lost one of its government contracts and demanded immediate attention to the defect. The letter not having been answered, the sub-tenant on September tenth, following, notified plaintiff that it had been compelled to secure other quarters and would hold plaintiff for its loss. The sub-tenant having later abandoned the premises this action was brought to recover on defendants' guarantee, the rents for the months of December, 1918, and January, 1919. *Held,* that upon the surrender by the defendants and the acceptance by the plaintiff of the lease between them, the plaintiff both as matter of law and as matter of fact assumed the performance of the covenant to supply live steam to the sub-tenant and a judgment entered upon the dismissal of the complaint at the close of the plaintiff's case will be reversed and a new trial granted.

Defendants were entitled to have the question whether the sub-tenant had not waived its right to abandon the premises with sufficient promptitude, submitted to the jury as requested.

Appeal by defendants from a judgment of the City Court of the city of New York, in favor of plaintiff, entered upon a verdict directed by the court.

Aronson & Salant (Louis Salant, of counsel), for appellant Cammeyer.

Rose & Paskus, for appellant Mattie Cammeyer.

Scott, Gerard & Bowers (Spotswood D. Bowers, Stewart W. Bowers, of counsel), for respondent.

Bijur, J. This action was brought to recover from defendants on a guarantee of rents made under the following circumstances:

The defendants were either jointly or consecutively lessees of a building, owned by the plaintiff, for a term ending February 1, 1919. Defendants sublet to a company which I shall call the Moritz Company one of the floors of the building for a term ending February 1, 1919 (simultaneously with the main lease)

and covenanted to supply the Moritz Company with steam in a certain amount and at a certain pressure. On December 11, 1917, the defendants surrendered their lease to plaintiff and the same was cancelled by mutual consent. An agreement of surrender was entered into, defendants agreeing to pay to plaintiff certain sums at fixed intervals and in addition thereto guaranteeing that the rentals of certain named tenants including the Moritz Company would be paid in monthly installments to plaintiff up to February 1, 1919. Other provisions have no bearing on the present controversy. Beginning early in January, the Moritz Company complained to plaintiff concerning a deficiency in the supply of live steam. There were promises to remedy the defect and occasionally the pressure was improved, but complaints continued and were followed by promises of improvement. On August 26, 1918, the Moritz Company formally notified the plaintiff that by reason of the failure of steam it had lost one of its government contracts and demanded immediate attention to the defect. This letter was not answered, whereupon, on September tenth, the Moritz Company notified the plaintiff that it had been compelled to secure other quarters and would hold the plaintiff for its loss; and on November 30, 1918, abandoned the premises. This action was brought to recover on defendants' guarantee of the rents for the months of December, 1918, and January, 1919.

The defense litigated was the constructive eviction of Moritz Company by the failure of plaintiff to furnish steam necessary to carry on the business as provided in the sublease between defendants and the Moritz Company.

Plaintiff seeks to sustain the direction of the verdict below on two grounds: *First,* that upon the authority of *Miller* v. *Clary,* 210 N. Y. 127, the covenant of de-

fendants to supply live steam to the Moritz Company would not pass with the land; and *second,* that the Moritz Company did not exercise its right to abandon the premises with sufficient promptitude and therefore waived this right.

There is a minor point to the effect that the supply of steam to the Moritz Company affected only part of its business and that, therefore, failure to supply it was not a sufficient reason for abandoning the premises; but as this was manifestly a question for the jury, if it was a question at all, I shall not discuss it.

As to the first point urged by respondents, namely, that an " affirmative or positive covenant " does not " run with the land," it is indeed so held in *Miller* v. *Clary* with the added statement that there are, however, " certain exceptions to this rule, as * * * *covenants in leases* " (p. 132). To what extent covenants in leases may or may not " run with the land " is not determined in the *Miller* case nor adverted to except quite casually. Indeed, the phrase " run with the land " is not particularly apt as applied to covenants in leases. The question there is more frequently and perhaps more appropriately described as being whether the covenant is " personal " or " collateral " on the one hand, or, on the other hand, whether it " attaches to and operates upon the estate " or " respects the thing demised " or is one " touching or concerning the thing demised as affecting the value of the reversion or the term or influencing the rent." See *Norman* v. *Wells,* 17 Wend. 136, and *Verplanck* v. *Wright,* 23 id. 506, both going back to the famous resolutions in *Spencer's Case,* 5 Rep. 16. The subject is also further considered in *Commonwealth Mtg. Co.* v. *DeWaltoff,* 135 App. Div. 33; *Storandt* v. *Vogel & Binder Co.,* 140 id. 671, and *Schoellkopf* v. *Coatsworth,* 166 N. Y. 77. In the light of these decisions it seems

clear that the covenant to furnish live steam for the necessary use of the tenant in the conduct of its business relates directly and exclusively to the premises demised and is altogether impersonal.

Although respondent insists that the Moritz Company remained and was regarded by the parties as the tenants of defendants even after the surrender of the latter's lease to plaintiff, the decisions are directly to the contrary. Beginning with the leading case of *Eten* v. *Luyster,* 60 N. Y. 252, and continuing through a long line of cases which have followed it, in particular *Ashton Holding Co.* v. *Levitt,* 191 App. Div. 91, and *Oshinsky* v. *Greenberg,* 39 Misc. Rep. 342, it has been consistently held that upon surrender of his lease by the main lessor the under tenant "becomes the immediate tenant of the original lessor" and "the interest and the terms of the subtenant of the lessee continued as if no surrender had been made."

If then plaintiff became Moritz's landlord and the Moritz Company plaintiff's tenant upon the terms of the Moritz Company's lease, it is difficult to escape the conclusion that as matter of law plaintiff became bound to perform this covenant of the Moritz lease which had originally been undertaken by the defendants as the intermediate landlord.

Apart, however, from this conclusion as matter of adjudicated law, the inescapable implication of fact would be to the same effect. Not only was respondent aware that defendants had made subleases and aware of the identity of the sublessees, but it required defendants to guarantee the payment of rent by the sublessees thereunder. If plaintiff deliberately chose to remain in ignorance of the terms of the subleases it could not escape responsibility for the knowledge which the barest inquiry would afford. *Anderson* v. *Connors, infra,* 387. It requires no argument to

demonstrate that had respondent obtained the information which was available to it it would necessarily have concluded that defendants who were surrendering their lease could not supply live steam to the Moritz Company and that no one could be expected to perform the defendants' covenant in that respect except respondent, nor could there be any doubt but that the Moritz Company would expect that covenant of its lease to be observed before it was called upon to perform its correlative duty of paying the rent. An almost similar case is *Anderson* v. *Connors*, 43 Misc. Rep. 384; approved in *United Realty Co.* v. *Stoothoff*, 133 App. Div. 245.

My conclusion, therefore, is that upon surrender by the defendants and acceptance by the plaintiff of the lease between them, the plaintiff, both as matter of law and as matter of fact, assumed the performance of the covenant to supply live steam to the Moritz Company.

In regard to the respondent's second contention that the Moritz Company did not vacate the premises with sufficient promptness, it seems clear that the constant complaints and constantly following promises to improve the condition bring this case clearly within the reasoning of *Ryan* v. *Jones,* 20 N. Y. Supp. 842; *Greacen* v. *Barker,* 130 id. 141, and *Perry-Freeman Co.* v. *Murphy,* 164 id. 74.

At best the defendants were entitled to have the questions involved in this contention submitted to the jury as directly and specifically requested by them in great detail.

Judgment reversed and new trial granted, with costs to appellants to abide the event.

GUY, J., concurs; WAGNER, J., not sitting.

Judgment reversed.