DOMINICK SALVI and Others, Plaintiffs, v. JOHN A. MANNING PAPER COMPANY, INC., CLUETT, PEABODY & COMPANY, INC., HARRIET WILSON, ALWYN E. STRAIT, ETHEL A. HAYES, THE CITY ICE AND FUEL COMPANY, VELVIL REALTY CORP., HYGIENIC ICE COMPANY and EMPIRE STATE ICE COMPANY, INC., Defendants.

Supreme Court, Rensselaer County, August 27, 1938.

*Tierney & Kenney*, for the plaintiffs.

*Murphy, Aldrich, Guy & Broderick [John A. Broderick* of counsel], for the defendants City Ice and Fuel Company, Velvil Realty Corp. and Empire State Ice Company, Inc.

*Clark Cipperly*, for the defendants Cluett, Peabody & Company, Inc., Alwyn E. Strait and Ethel A. Hayes.

*Frank H. Deal*, for the defendant John A. Manning Paper Company.

BERGAN, J. Each of the defendants except the Hygienic Ice Company moves to dismiss the complaint on the ground that the facts stated are insufficient to constitute a cause of action. Upon this motion the complaint must be construed liberally and the facts pleaded given every fair intendment and the benefit of every fair inference in support of the pleading.

The first requisite for the enforcement of an affirmative covenant running with the land against a subsequent purchaser is that " it must appear that the grantor and grantee intended that the covenant should run with the land." (*Neponsit Property Owners' Assn.* v. *Emigrant Ind. Sav. Bank*, 278 N. Y. 248, 255.) The

complaint should first be examined, accordingly, to determine whether the predecessors in title of the plaintiffs and those of the defendants who were parties to the agreement now relied upon intended that the covenants they made were personal, or whether they so attached to the realty that the affirmative obligation of keeping the dike in repair was incurred by subsequent purchasers of the obligors.

By an agreement entered into on May 1, 1860, a copy of which is attached to the complaint as Exhibit B, William R. Yourt, one of the predecessors in title of the plaintiffs, entered into an agreement with the executors of the last will and testament of Benjamin Marshall for the sale of Yourt's interest in the dam and dike now in question and of the land overflowed and to be overflowed by reason of flash boards referred to in the agreement and for the conveyance by Yourt of certain lands then owned by him. The executors on their part agreed, among other things, to preserve and keep in order the dike. This agreement in terms bound the executors " and their successors and assigns." The agreement was conditioned upon the granting of an order by the Supreme Court empowering the executors " to make and complete such purchase and payment aforesaid." At the time this agreement was made, title to the lands now owned by plaintiffs was in William R. Yourt.

The deed given by Yourt, in which his wife joined, in pursuance of the agreement of May 1, 1860, was dated May 14, 1862. The deed recited the obligation on the part of the executors to preserve and keep in order the dike. Unlike the contract of May 1, 1860, the deed did not recite that this obligation devolved upon the " successors and assigns " of the executors. Passing for the moment the power of the executors, acting as they did in a representative capacity, to incur this kind of affirmative obligation either for themselves or their successors and assigns, it would seem to me that the omission of the words " successors and assigns " in the deed of conveyance would indicate the obligation assumed by the executors to repair the dike was personal and that subsequent purchasers did not succeed to it.

The words " successors and assigns," in connection with the obligation assumed by the grantees, seem deliberately to have been omitted from the deed of conveyance and it is the common rule of construction that when " a preliminary contract for the sale of land has been executed by a conveyance, any inconsistencies between the contract and the deed are to be explained and governed solely by the latter, which is presumed to contain the final agreement of the parties." (*Murdock* v. *Gilchrist*, 52 N. Y. 242, 246.) In the interim between the contract and the deed, the grantor had divested

himself of the title of premises now owned by the plaintiffs, and it is to be assumed that in that period the grantees had applied to the Supreme Court for approval of their purchase. Either of these surrounding facts may tend to give some explanation for the omission in the deed of words indicating an intent to bind subsequent purchasers of the land with the affirmative obligation in respect of the repair of the dike. These facts lead me to the conclusion that it was not the intention of the grantors and grantees under the deed of May 14, 1862, that the affirmative covenant by the grantees to repair the dike should run with the land and be binding upon their successors in title.

If such an intention could be assumed, however, I think the present defendants would nevertheless not be bound by it and that the rule enunciated in *Miller* v. *Clary* (210 N. Y. 127) is applicable to the facts in this case. The covenant to repair the dike, like the covenant to construct and maintain a shaft discussed in the *Miller* case, " is known in the law as an affirmative or positive covenant. It compels the covenantor to submit not merely to some restriction in the use of his property, but compels him to do an act thereon for the benefit of the owner of the dominant estate " (p. 132). Judge CUDDEBACK, writing for the court in that case, after discussing the authorities both in England and in this country which underlie the rule, reached the conclusion that (p. 136) " the rule that affirmative covenants accompanying conveyances of land are not enforceable against owners is a wise one. It has its limitations, as has been seen, and may require further limitation; but the present case is one in which the rule should be applied."

The recent decision in the Court of Appeals in *Neponsit Property Owners' Assn.* v. *Emigrant Ind. Sav. Bank* (*supra*), decided in May of this year, does not overrule the judicial policy in this State declared in the *Miller* case. It establishes, in accordance with the suggestion of Judge CUDDEBACK, that the rule " may require further limitation " and additional exception. Several exceptions or limitations have long been well recognized, such as covenants to build fences along boundary lines, covenants relating to party walls, covenants to provide railway crossings and covenants in leases to pay rent or repair the buildings on demised premises. (See discussion in the *Miller* case, p. 134, and in the *Neponsit* case, pp. 257–259.) Certainly the *Neponsit* case does not abandon the principle " that ordinarily an affirmative covenant is a personal and not a real covenant " (p. 257), because the court announced that it adhered to the principle reiterated by Chief Judge CARDOZO in *Guaranty Trust Co.* v. *New York & Queens County R. Co.* (253 N. Y. 190, 204) that " there is now in this State

a settled rule of law that a covenant to do an affirmative act, as distinguished from a covenant merely negative in effect, does not run with the land so as to charge the burden of performance on a subsequent grantee." The *Neponsit* case must be construed, accordingly, as creating another exception to the general rule, limited in application to facts similar to those there under consideration. (See, also, *Sheehan* v. *Spring Valley Wood Products Corp.*, 194 App. Div. 119.) Whatever may be said of the distinction in the *Neponsit* case, there is surely too strong an analogy between the obligation sought to be enforced in the case at bar and the facts considered in the *Miller* case to admit of a further exception upon the facts here pleaded so long as the *Miller* case has not been overruled or the principles upon which it is based abandoned.

Assuming that the deed, and not the contract of which it was a result, measured the obligations of the parties, there was, at the time the deed was given, no privity of estate in the lands now owned by the plaintiffs and the lands of any of the parties to the deed. The Yourts had previously divested themselves of title to lands now owned by plaintiffs by this deed of October 1, 1860, to James Irving. They had then, in 1862, no interest in the lands now of the plaintiffs, which could bring those lands within a privity of estate. It would seem doubtful, therefore, if the lands then owned by Irving and now owned by the plaintiffs had such a relationship with the estates of the contracting parties that the agreement between them is now enforcible against the successors of the obligors at the instance of the successors of one who was a stranger, not only to the contract itself, but to the estate affected by the contract or of parties to the contract. For a discussion of the general principles involved, see *Mygatt* v. *Coe* (124 N. Y. 212) and *Van Rensselaer* v. *Hays* (19 id. 68, 91). The principle was reiterated in general language in the *Neponsit* case (*supra*). Judge LEHMAN, writing for the court, gave (p. 255) as the third requirement of a real covenant, distinguished from a personal one, that it must appear that there is privity of estate between the party claiming the benefit of the covenant and the party who rests under its burden.

Moreover, there is no allegation in the complaint that any of the defendants receive any benefit whatever from the dike and the requirement for the repair of the dike, if it be deemed to succeed to the defendants, succeeds only so long as some benefit from it is derived by them. " Burden and benefit were understood to be coextensive and reciprocal. There is no duty running with the land to maintain a right of way where an interest in the way is not appurtenant to the enjoyment of the land." (*Levy* v. *Schnur-*

*macher Constr. Corp.*, 255 N. Y. 83, 87, citing *Morehouse* v. *Woodruff*, 218 id. 494, and *Allen* v. *Culver*, 3 Den. 284, 297.)

The first cause of action is dismissed as to those parties who have joined in this motion.

The second cause of action is based in negligence. Liberally construed the complaint must be treated as pleading the following facts: That the dike is now owned by certain of the defendants; that those defendants fail and neglect to repair the dike and to keep it " in good and proper repair " (Complaint, paragraphs eighth and twelfth) and that, as a result of the failure to keep the dike in repair, the Poestenkill creek has flooded the lands of the plaintiffs. (Paragraphs ninth and thirteenth.) The negligence pleaded in the thirteenth paragraph of the complaint must necessarily be read in connection with the earlier allegations of failure to maintain the dike in proper repair.

Accordingly, the complaint must be construed as meaning that the flooding of the water in the creek was due to the failure of the defendants properly to maintain a structure on their lands, and under well-settled principles this gives rise to a cause of action for damages.

The first paragraph of the seventh allegation of the complaint may be construed as alleging that the defendants, except the Hygienic Ice Company and Empire State Ice Company, are the owners of all the title of the executors of Marshall at the time of the conveyance from the Yourts in 1862. The next paragraph of the same allegation may be construed as pleading in effect that the defendants, other than the Hygienic Ice Company, the Empire State Ice Company and the City Ice and Fuel Company, succeeded to and now own the interest conveyed to the executors by such deed. It does not clearly appear on which lands the dike was erected, although, from the recitation of Exhibit " B," it might be concluded that since the lands overflowed were owned by Yourt, the dike was erected on those lands and was included in the conveyance of the deed of 1862. At any rate there is no clear allegation that any of the three ice companies is presently the owner of the dike, and in the absence of such an allegation the second cause of action in the complaint must be dismissed as against those two which have joined in the motion, the City Ice and Fuel Company and the Empire State Ice Company. The further allegation of the seventh paragraph that the ice companies became owners of a part of the premises formerly owned by the executors is not helpful as an allegation of specific ownership of the dike. I construe the complaint as alleging that each of the other defendants owns the dike.

" Responsibility for damages to lands caused by the maintenance of a dam is generally imposed on the owner of the structure." (67 C. J. 724, citing *Jewett* v. *Ricker,* 68 Me. 377.) Negligence in the construction of a reservoir resulting in damage to other owners gives rise to a cause of action. (*Reed* v. *State,* 108 N. Y. 407. See, also, *Mairs* v. *Manhattan Real Estate Assn.,* 89 id. 498.) If, as the pleading alleges, each of the enumerated defendants has control of the dike and so negligently maintains it that damage is done to the lands of others, a cause of action exists, and the pleading, viewed liberally, must be construed as relying upon such a theory in the second cause of action.

The motion is denied as to such defendants in respect of the second cause of action.

No costs.

Submit order in accordance with this memorandum.