Felix J. Aulisi, J.
The plaintiffs are successors to the title of Elisha D. Wilkie and Martha J. Wilkie of a parcel of real property located in the Town of Queensbury, County of Warren, and in this action they seek a declaratory judgment establishing their right to the use of water at their .residence for domestic purposes from the defendant’s water system without the payment of water rent to the defendant.
The city’s water system includes about six acres of land which were conveyed to its predecessors, the Trustees of the Village of Glens Falls, for the sum of $300 by the Wilkies by deed dated March 16, 1872. Said deed also conveyed to the grantees a strip of land for the purpose of laying a water line from the Wilkie Reservoir, as it was called, across the Wilkie lands and in consideration of this the grantees granted to the Wilkies, their heirs and assigns the right to the use of the water from said water line for the domestic use of the family and stock of the farm only.
After 87 years the owners of the premises originally occupied by the Wilkies "were billed for domestic use of water for the first time in 1959. The bill was paid under protest and I am of the opinion that the plaintiffs’ contention that they are entitled to the use of the water without charge should be sustained for the reason that it is my belief that the terms of the March 16, 1872, deed created a covenant which runs with the land. The significant clauses in said deed provide as follows, viz.:
Parties of the second part agree that they will connect with a main pipe which may be laid from said land to said Village a service pipe not to exceed one half inch in interior diameter and lay such service pipe from such main pipe to the building of said parties of the first part and where Isreal Wilkie and wife now reside and will keep and maintain such pipe in repair and will *927 permit the water to flow through such service pipe to said buildings in a continuous running stream when the water will naturally so flow and in a sufficient quantity for the ordinary domestic use of the family and stock of the farm only, save and except in case of fire or danger of fire and burning the buildings in which ease there may be a flow to the full capacity of such service pipe. This agreement as to the flow and use of water through such service pipe is on condition however that said parties of the first part their heirs and assigns shall faithfully observe all and not violate any of the ordinances rules or regulations which may from time to time be passed fixed or adopted by said parties of the second part or their successors in office in regard to any water works of said Village or the use thereof or the taking or using any water therefrom or thereby, save and except however that the parties of the first part shall not be required to use faucets said service pipe shall be connected with the main pipe by inserting it at or near the bottom thereof and at a point in the main pipe where the same is higher than the foundation of said buildings as to putting and maintaining service pipe and the use of the water through the same and to be binding upon the parties of the second part officially not personally and upon their successors in office.
It appears to me that the above agreement did not create a merely personal covenant between the Wilkies and the village but rather one which touched and concerned the land a substantion degree and, therefore, enforcible by the present owners of the land against the defendant.
Although earlier New York cases had apparently not adverted particularly to the affirmative nature of the undertaking in holding that the burden of covenants did or did not run with the land under various circumstances, the English rule against the enforcement of the burden of affirmative covenants, either at law or equity, as against successors in interest, was approved and adopted, with some exceptions, in Miller v. Clary (210 N. Y. 127). In that case, the court held that a covenant to provide a shaft to plaintiff’s land to deliver power from a mill was not enforcible against the covenantor’s successor in interest. An easement to take power from the mill, created by the same agreement, was held enforcible, but it was held that the defendant was not required to construct and maintain the shaft by which the power was transmitted and, while the plaintiff had the power to enter upon the defendant’s land for the purpose of constructing and maintaining the shaft, the undertaking to bear the expense of the work was the personal obligation of the original grantor and did not run with the land or create an equitable liability on the part of his successors. It was said, however, that there were certain exceptions to the rule against affirmative covenants running with the land, including covenants to repair fences on boundary lines, to repair private ways, covenants in leases, and covenants relating to party walls, and *928 the court indicated that the rule might require still further limitation.
The court in Neponsit Property Owners’ Assn. v. Emigrant Ind. Sav. Bank (278 N. Y. 248) held that a covenant that each lot owner in a subdivision should pay an annual assessment to a property owners’ association for maintenance of common facilities such as roads, paths, parks, beaches, sewers, and other public purposes, ran with the land so as to be enforcible by a successor of the original covenantee against a successor of the original covenantor, went on to point out that the New York rule was based upon the English decisions, that in many American jurisdictions, the “narrow” English rule had been criticized and a more literal and flexible rule substituted, and that while the New York courts had not abandoned the historic distinction drawn by the English court, exceptions to its application had been recognized. While it may be difficult to classify these exceptions or to formulate a test of whether a particular covenant to pay money or perform some other act falls within the general rule against affirmative covenants, said the court, at least in order to run the covenant must “ touch ” or “ concern ’ ’ the land in a substantial degree, going on to indicate that where the covenant affects the legal relations, advantages, and burdens of the parties as owners of particular parcels of land and not merely members of the community in general, it might be found to run. This method of approach was said to have the merit of realism and of being founded on the effect of the covenant rather than on technical distinctions, the court adding that the test in each case was whether the covenant imposed, on the one hand, a burden upon an interest in land, which, on the other hand, increased the value of a different interest in the same or related land, so that, unless technical form was exalted over substance, the distinction depended upon the effect of the covenant on the legal rights which otherwise would flow from the ownership of land and which were connected with the land.
In another case, Atlas Land Corp. v. Ettinger (283 App. Div. 379), it was decided that the benefit of a covenant to supply heat from defendant’s premises to the adjoining building-retained by grantor, was enforcible by the grantor’s successors in interest against the original covenantor, the court saying that regardless of whether the covenant was one technically running with the land, it was enforcible in equity.
As was stated by Judge Stanley Ftjld in Nicholson v. 300 Broadway Realty Corp. (7 N Y 2d 240, 245): “ £ The problem then is: Does the covenant in purpose and effect substantially *929 alter these rights f ’ * * * The burden of affirmative covenants may be enforced against subsequent holders of the originally burdened land whenever it appears that (1) the original covenantor and covenantee intended such a result; (2) there has been a continuous succession of conveyances between the original covenantor and the party now sought to be burdened; and (3) the covenant touches or concerns the land to a substantial degree.”
In that case, as in this, it is clear that all three of these essentials are present; indeed it is only with the third that we need concern ourselves. If, as the decision in the Neponsit case (supra) makes clear, the test as to whether a covenant touches or concerns the land is based upon substance rather than upon form, on the covenant’s effect rather than on technical distinctions, it would seem that the covenant here under consideration does touch and concern the land of the defendant. As is evident, it affected the legal relations of the parties to the covenant as owners of particular parcels of land. More particularly, the covenant gave to the covenantees Wilkies a right not possessed by other landowners, of having water supplied to their home, and it imposed upon the covenantor Village of Glens Falls, the burden, not cast upon other landowners, of furnishing water to premises adjoining its own. Also, any fear that the covenant would impose undue restriction on alienation or an onerous burden in perpetuity is dispelled by the fact that by its terms the flow and use of the water through the service pipe is “on condition however that said parties of the first part their heirs and assigns shall faithfully observe all and not violate any of the ordinances rules or regulations which may from time to time be passed fixed or adopted by said parties of the second part or their successors in office in regard to any water works of said Village or the use thereof or the taking or using any water therefrom or thereby.”
I, therefore, find and decide that the plaintiffs have sustained their cause of action and entitled to judgment against the defendant.
The motion to dismiss the complaint is denied. Findings of facts, conclusions of law and judgment may be submitted in accordance with the foregoing determination.