opinion of the court
Herbert Kramer, J.
This action was begun in the housing court to restore three tenants to occupancy of a substantially fire damaged premises and to compel the landlord to do the work therefor.
The landlords’ attorney stipulated on behalf of his clients to restore the premises within 90 days, which stipulation was so ordered by this court. Subsequently, the landlord entered into a contract for the sale of the premises with Bruce Marlow. Within the 90-day restoration period, Mar-low took title to the premises. The deed provided that the premises was subject “to a landlord-tenant litigation under *656 the within index number and further subject to the grant- or’s obligation pursuant to said litigation.”
The new owner moved to intervene in the original action and to vacate the original stipulation of settlement. He seeks this relief on various equitable grounds, contending that the construction costs for. restoration exceed $60,000. Alternatively, he asks for an extension of time to complete the work.
The tenants cross-moved to formally join the new owner in the proceeding and to direct him to comply with the prior order of restoration. The tenants have also moved for an order to punish both the old and the new owner for contempt for their failure to comply with the court’s previous restoration order.
Thus, the court must decide whether it can order the original landlord, now out of possession and control, to restore the building and find him in contempt for his failure to do so. Similarly, can this court order the new landlord, not a party to the original agreement, to restore the premises and find contempt for his failure to do so? Does this court have jurisdiction under article 2 of the New York City Civil Court Act to order the. restoration of the physical plant of a substantially burned out premises? Finally, can this court vacate its order and underlying stipulation?
Each issue will be dealt with in seriatim.
The issue as to who is liable under the facts at bar is determined by recourse to and examination of property covenants.
Covenants may be classified as either real or personal.[1] Real covenants running with the land bind not only the covenantor but also his grantee and subsequent grantees. (13 NY Jur, Covenants and Restrictions, § 7.) Personal covenants bind only the covenantor and thus do not run *657 with the land. (13 NY Jur, Covenants and Restrictions, §7.) Persons taking with notice of personal restrictive covenants, however, may also be bound thereby. (13 NY Jur, Covenants and Restrictions, § 119.)
Whether real covenants will run with the land depends in part on the distinction between affirmative and negative covenants. Affirmative covenants are those in which the party binds himself either to continue the status quo as represented or to perform some acts in the future. Under negative covenants, however, the covenantor obligates himself to refrain from performing some act. This distinction is further obscured as some duties which appear affirmative in form are determined to be negative in substance. (35 NY U L Rev 1344.)
English common law originally limited the devolution of duties to those arising from contracts between landlords and tenants. (35 NY U L Rev 1344, 1346.) English courts held in some of the early cases that both affirmative and negative covenants ran with the land. The present English rule, however, is that affirmative covenants do not so run.
New York law is much more unsettled. The Court of Appeals originally held, following the modern English rule, that affirmative covenants do not run with the land. (Miller v Clary, 210 NY 127.) Examples of such covenants were agreements to furnish water power and to maintain or repair dams. (Ibid.)
Excepted from this ruling and held binding were covenants to fence (Countryman v Deck, 13 Abb NC 110; Dey v Prentice, 90 Hun 27; Concklin v New York Cent. & Hudson Riv. R.R. Co., 149 App Div 739, app dsmd 207 NY 752), to construct party walls (Weyman v Ringold, 1 Bradf 40; Crawford v Krollpfeiffer, 195 NY 185, affg 122 App Div 848),[2] and covenants in leases to pay rent (St. Regis Rest. v Powers, 219 App Div 321, revg 127 Misc 338),[3] or to repair buildings on the demised premises (Silberberg v Trachten *658 berg, 58 Misc 536; Bruder v Crafts & D'Amora Co., 79 Misc 88; Snow v West Sixty-Fifth St. Garage Co., 166 NYS 414), all affirmative in nature.[4]
In Neponsit Prop. Owners’ Assn, v Emigrant Ind. Sav. Bank (278 NY 248), the Court of Appeals began to move away from the position they had earlier adopted. It was too difficult to classify all the exceptions to the rule, and no rigid test could be satisfactorily formulated. The Neponsit court therefore decided that the effect and substance of the particular covenant should be regarded, rather than its form. Whether a covenant runs with the land or is personal “must depend upon the effect of the covenant on the legal rights which otherwise would flow from ownership of land and which are connected with the land.” (Supra, at p 258.) To determine whether these standards had been met, so that a real covenant would run with the land, three factors were established: (A) the grantor and grantee must intend for it to run, (B) the covenant must “touch” or “concern” the land, and (C) there must be “privity of estate” between the promisee or party claiming the benefit of the covenant, and the promisor, or party resting under its burden (supra, at p 255).
Following the adoption of this approach in Neponsit, lower courts paid relatively little attention to whether the burden of the covenant was affirmative or negative. Rather, they concentrated on the nature of the covenant, i.e., whether it touched or concerned the land, and on the intention of the parties. (Paulmyra Holding Corp. v Second Church of Christ Scientist, 177 Misc 978; Salvi v Manning Paper Co., 168 Misc 661.)
In 1959 the Court of Appeals decided Nicholson v 300 Broadway Realty Corp. (7 NY2d 240), which followed the reasoning of Neponsit and helped to clarify New York law. *659 Not only did it undermine any theory that Neponsit merely-created a new factual exception to Miller, but it also indicated that the burdened land need not be benefited. It should also follow from Neponsit and Nicholson that the New York courts will uphold any affirmative duty that is not perpetual in nature or overburdensome in effect. (35 NY U L Rev 1344, 1359.)
Nicholson also clarified the notion of a promise touching or concerning the land, the second factor in Neponsit (supra). If the promisor’s legal relations with respect to the land in question are lessened, i.e., his legal interest as owner rendered less valuable by the promise, then the burden of the covenant touches or concerns that land. If the promisee’s legal relations with respect to that land are increased, i.e., his legal interest as owner rendered more valuable by the promise, then the benefit of the covenant touches or concerns that land. This effect must be had upon the legal relations of the parties as owners of the land in question, and not merely as members of the community in general, such as taxpayers, or owners of other land (46 Cornell LQ 349, 351).
In the instant case, the three factors of Neponsit are present. The covenant to restore the building is also not perpetual in nature or overburdensome in effect. Thus, it should run with the land. The covenant’s running discharges the original owner from his obligations and instead obligates the current owner, Bruce Marlow.
Although Mr. Marlow, the new landlord, perhaps never expressly assumed the duties of the stipulation by taking subject to the litigation, he could nevertheless be bound by its terms. Once a particular covenant runs with the land it may be regarded as a contract whose performance is so closely connected with the land that the contractual rights and duties are enforceable by and against a “stranger” to the contract. (35 NY U L Rev 1344.) Although Mr. Marlow was a “stranger” to the stipulation, the contractual duty to restore the premises to habitability and to return the tenants to possession may be enforceable against the present owner in the proper court, as a covenant running with the land.
*660 Having determined that the tenant may enforce this covenant that runs with the land, the issue is presented as to whether this court is the appropriate forum. Subdivision (c) of section 110 of the New York City Civil Court Act sets forth the powers of the housing court but does not confer specific power to order restoration of premises to habitability. No case has been cited or found which extended this broad grant of power to include complete restoration of premises destroyed by fire.[5] In Roth v Kelley (104 Misc 2d 463), it was held that the Civil Court had jurisdiction and power to compel the landlords to remedy or remove defects or deficiencies. Repairs of specific violations seem to be the furthest a court has gone in utilizing subdivision (c) of section 110.
Moreover, article 2 of the New York City Civil Court Act sets forth the jurisdictional bounds of the Civil Court. Section 203 describes the court’s jurisdiction over real property actions. Restoration of buildings, however, is not included therein. Were this an action for the removal of housing violations or for repairs, however, then this court could order the landlord to proceed, without regard to the amount.
Section 213 of the New York City Civil Court Act gives the court jurisdiction of actions for rescission or reforma-: tion if the amount in controversy does not exceed $10,000. As the costs here entail $60,000, this court does not have jurisdiction to modify or to vacate the stipulation.
Finally, section 212 of the New York City Civil Court Act provides that, in the exercise of its jurisdiction, the court shall have all of the powers that the Supreme Court would have in like actions and proceedings. This confers only incidental, rather than primary, power in the Civil Court. (Romag Realty Corp. v Saunders, 77 Misc 2d 11.) *661 Consequently, it is not a catchall which confers upon the court equitable powers not expressly granted. (Rottenberg v Cirillo, 58 Misc 2d 309.) The comparable powers of the Supreme Court are exercisable by the Civil Court only when the Civil Court can exercise jurisdiction in the first instance. (Kwoczka v Dry Dock Sav. Bank, 52 Misc 2d 67.) Thus, this court can find no specific jurisdictional grant to order this restoration or to effect the agreement.
Consent is similarly ineffective to confer subject matter jurisdiction. (Kleinstein v Gonsky, 134 App Div 266; Orange County Dev. Corp. v Perez, 67 Misc 2d 980; Lawyers Tit. & Guar. Co. v Tausig, 149 Misc 594.) Since the right to maintain summary proceedings does not exist at common law, but is conferred by statute, the parties to a lease cannot, by agreement, confer on a party seeking to recover possession of real property the right to maintain such a proceeding in a case not provided for by statute. (Beach v Nixon, 9 NY 35.) Thus, in the instant case, in the absence of a specific grant of jurisdiction, consent is not sufficient to confer subject matter jurisdiction on this court.
Having thus determined that an enforceable real covenant running with the land was created by stipulation, but this court does not possess jurisdiction to enforce same, this court further holds that it may not vacate the stipulation restoring the tenants to possession,[6] nor issue orders of contempt for failure to comply, nor in fact take any action with respect thereto.[7] (Matter of Spector v Allen, 281 NY 251; Bachman v Harrington, 184 NY 458; Ostrom v Ostrom, 270 App Div 872; Di Raffaele v Gerkhardt, 217 App Div 187; 17 Am Jur 2d, Contempt, § 42; 17 CJS Contempt, §64.)
*662 Although there may be incidental matters jurisdiction-ally retainable by this court, those matters could not affect the major issues in contention nor the result. This court on its own motion dismisses the matter with leave to renew in an appropriate court of general jurisdiction.

. A real covenant is one having for its object something annexed to, inherent in, or connected with land or other real property •— one which relates to, touches, or concerns the land granted or demised and the occupation or enjoyment thereof. If, however, the item to be done is merely collateral to the land or estate conveyed and does not touch or concern it or affect the quality, value, use, or enjoyment of such land or estate, a covenant relating thereto is labeled a personal one.

. New York courts have distinguished between agreements to pay half the cost of a party wall on the using of the wall in the future, held to be a real covenant, and agreements to pay half the expenses of building, or rebuilding, or repairing a wall, deemed a personal covenant.

. A covenant by a lessee to pay the amount by which insurance premiums were increased did not run with the land as such; if regarded as a covenant to pay additional rent, it did run with the land.

. Later New York cases generally adhered to the rule that affirmative covenants, with certain exceptions, do not run with the land. (See’Guaranty Trust Co. of N. Y. v New York & Queens County Ry. Co., 253 NY 190; but see Levy v Schnurmacher Constr. Corp., 255 NY 83; Morgan Lake Co. v New York, New Haven & Hartford R.R. Co., 262 NY 234, revg 237 App Div 841 [exceptions to the rule of Miller and Guaranty Trust].)
American courts, except for those in New York, do not distinguish between affirmative and negative covenants as regards their running with the land, and usually do not even designate affirmative covenants as such. The only consideration in deciding whether a covenant runs with the land is whether it is so related to the land as to enhance its value and confer a benefit upon it.

. CCA article 2 does not create substantive rights of action. At common law, a landlord was under no duty to make repairs or to restore a tenant to possession after a fire destroyed or damaged the premises so as to render them untenantable. Modern case law has similarly held that, upon the substantial destruction by fire of a structure occupied by a tenant, no obligation rests upon either the landlord or the tenant to rebuild it in the absence of covenants in the lease requiring it to be done. (Smith v Kerr, 108 NY 31; Doupe v Genin, 45 NY 119; see, also, Real Property Law, § 227.)

. The court has control over stipulations and the power to relieve the parties from the terms thereof if both parties can be restored to their status quo ante. (Hinds v Gulutz, 61 Misc 2d 384; Barcia v Barcia, 283 App Div 726; Campbell v Bussing, 274 App Div 893; Bond v Bond, 260 App Div 781.) Good cause, however, must be adduced to persuade the court to relieve a party from his stipulation. Such cause would be fraud, collusion, accident, mistake although the mistake need not be mutual, or when holding the parties to the terms of the stipulation would produce results that are either unjust or harsh. (Ragen v City of New York, 45 AD2d 1046; Hinds v Gulutz, supra; De Santolo v La Porte, 89 NYS2d 114; Baksi v Wallman, 62 NYS2d 26; Hallow v Hallow, 200 App Div 642.)

. The fact that this court inadvertently ordered the jurisdictionally defective stipulation requires that the order be vacated, but not the underlying contractual stipulation.